UPON REHEARING EN BANC
ELIZABETH A. McCLANAHAN, Judge.
A jury convicted Howard Z. Garnett, Jr. of rape, abduction with intent to defile, assault and battery on a family or household member (third or subsequent offense), and animate object penetration. Garnett contends the trial court erred in denying his motion for a new trial on the grounds that the Commonwealth failed to disclose exculpatory evidence, in the form of tape recordings and transcripts of the victim’s statements, in violation of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). A panel of this Court held the Commonwealth’s failure to disclose the victim’s verbatim statements constituted a Brady violation and reversed his convictions in an unpublished opinion. We granted a petition for rehearing en banc and stayed the mandate of the panel decision. Upon rehearing en banc, we affirm the trial court.
I. BACKGROUND
On the morning of July 24, 2003, the victim went to Gar-nett’s barn to retrieve some belongings.[1] When Garnett appeared, she attempted to leave but he grabbed her truck keys out of her hand. Garnett told her he wanted to return some things to her. The victim followed him into the house and then the bam, but he refused to return her keys. Once in the barn office, Garnett physically blocked the exit and prevented the victim from leaving. He pushed her up the stairs into a *528 secluded area where he verbally and physically attacked her, ultimately raping her. Garnett then drove the victim home in her truck and left.
The victim reported the rape later that afternoon to the Madison County Sheriff’s Office and submitted a handwritten statement. Deputy Hill observed scratches and bruises on her body, redness around her neck, her clothing was dirty and in disarray, her face was red and puffy, her voice was “very broken and soft,” and the frame of her glasses was bent. Hill took her to the hospital for a sexual assault examination, and interviewed her that night with Investigator Michael. The victim gave another statement on July 31 in which she described Garnett’s sexual assaults of January 19 and April 29, 2003.[2] Both interviews were recorded and transcribed. The victim also submitted a handwritten statement, and disclosed additional details regarding the alleged assaults to the Commonwealth while preparing for trial. Some of these statements conflicted with her preliminary hearing testimony.
Before trial, Garnett requested the tape recordings and transcripts of the victim’s statements to police, arguing the evidence was exculpatory and could be used to impeach her credibility. The Commonwealth provided Garnett with summaries of her statements, which also specifically described the inconsistencies with her preliminary hearing testimony, but it did not release the recordings and transcripts. At the pretrial hearing, the Commonwealth represented that it had disclosed all exculpatory statements and that there were no inconsistencies between the victim’s two recorded statements. Garnett accepted the Commonwealth’s representations and withdrew his request for the court to conduct an in camera review of the statements. Garnett nevertheless persisted in his request for the recordings, contending that the “manner” in which the victim “artieulate[d]” her statements was “potentially exculpatory.” The trial court denied the request but directed the *529 Commonwealth’s attorney to review the recorded statements prior to trial and disclose further exculpatory evidence, if any.[3]
After he was convicted, Garnett filed a motion to set aside the verdict. He maintained that the Commonwealth violated the mandates of Brady by responding to his discovery request for the victim’s verbatim statements by providing only typed summaries of the statements. Before ruling on Garnett’s motion, the trial court reviewed in camera the recordings and transcripts of the statements and compared them to the typewritten summaries. The court found that the victim’s statements revealed material inconsistencies in her testimony, but that the Commonwealth sufficiently disclosed the exculpatory material. The court further held that, by virtue of the Commonwealth’s disclosure of the summaries in lieu of “the exact words that [she] uttered” in their entirety, Garnett was not prejudiced under Brady and not entitled to a new trial.
II. ANALYSIS
“A Brady violation occurs when the government fails to disclose evidence materially favorable to the accused.” Youngblood v. West Virginia, — U.S.-,-, 126 S.Ct. 2188, 2190, 165 L.Ed.2d 269 (2006). “There are three components of a true Brady violation: The evidence at issue must be *530 favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued.” Strickler v. Greene, 527 U.S. 263, 281-82, 119 S.Ct. 1936, 1948, 144 L.Ed.2d 286 (1999). The Commonwealth’s duty to disclose exculpatory information includes evidence that can be used to impeach prosecution witnesses. United States v. Bagley, 473 U.S. 667, 676, 105 S.Ct. 3375, 3380, 87 L.Ed.2d 481 (1985); Youngblood, — U.S. at—, 126 S.Ct. at 2190; Robinson v. Commonwealth, 231 Va. 142, 150, 341 S.E.2d 159, 164 (1986) (“The impeachment value alone makes the information exculpatory.”).
Garnett contends the victim’s verbatim statements constituted impeachment evidence the Commonwealth was required to disclose under Brady. The Commonwealth argues Garnett failed to establish it -withheld exculpatory evidence and failed to establish that he suffered prejudice sufficient to require a reversal of his convictions.
A. The Commonwealth made the required disclosure of the Brady material in the specific summaries of the victim’s statements.
Once a Brady claim is asserted, and a dispute arises as to whether information is indeed exculpatory, the trial court has the discretion to review the evidence in camera and assess whether the Commonwealth has favorable evidence which, if not disclosed, would prejudice the defendant. Bowman v. Commonwealth, 248 Va. 130, 135, 445 S.E.2d 110, 113 (1994); Lemons v. Commonwealth, 18 Va.App. 617, 621, 446 S.E.2d 158, 161 (1994) (“If in doubt about the exculpatory nature of the material, a prosecutor should submit it to the trial court for an in camera review to determine if it is exculpatory and should be disclosed.”).
Prior to trial, Garnett requested all exculpatory materials, including the tape recordings and transcripts, but then withdrew his request for an in camera review at the pretrial hearing. In response to Garnett’s motion to set aside the *531 verdict after his conviction, the trial judge conducted the in camera review and found:
The Commonwealth made two separate disclosures regarding statements of the victim. The first disclosure was— was very specific and it revealed material inconsistencies. The second disclosure was even more detailed. It described in a comprehensive way exactly what the victim said in her statements to Investigator Michael, and the Court has compared the disclosures that took place and the statements that were actually provided to the in-camera materials that the Commonwealth has delivered to the Court, and here, in the Court’s view, all of the exculpatory evidence and the impeachment materials was actually provided to the defense. The Commonwealth even points out in one of its disclosures, very clearly, what the inconsistencies actually consist of. There’s something of a road map to impeachment, so, in the Court’s view, the disclosure was sufficient when one compares what was disclosed to the in-camera material.
(Emphasis added). Accordingly, the trial court ruled that the statements were indeed exculpatory but that there was no Brady violation because the Commonwealth sufficiently disclosed the exculpatory evidence—providing the defendant “a road map to impeachment” through its summary disclosures.
Contrary to Garnett’s argument, Brady does not require disclosure of the recordings or transcripts. See United States v. Grunewald, 987 F.2d 531, 535 (8th Cir.1993) (government complied with Brady by providing defendant typed summaries of interview notes instead of the available handwritten notes containing material favorable to defendant); United States v. Phillips, 854 F.2d 273, 278 (7th Cir.1988) (government complied with Brady by providing defendant with exculpatory evidence in the form of detailed summaries); United States v. Van Brandy, 726 F.2d 548, 551-52 (9th Cir.1984) (same). Garnett was provided the substance of the victim’s statements, and he attacked her credibility as to each inconsistency. He thoroughly cross-examined the victim, challenging her recollection of the facts regarding the rape including how long she *532 was in the bam, whether he sexually assaulted her orally, and why she was willing to follow him into the secluded bam after he had previously assaulted her. Garnett also pointed out the lack of corroborating evidence. He questioned the victim about when she terminated her intimate relationship with him, the extent of their business relationship, and her possible motive for testifying falsely.
We recognize that “the more prudent and expeditious route would have been for the government to provide” the recordings or transcripts. Grunewald, 987 F.2d at 585; see Lemons, 18 Va.App. at 621-22, 446 S.E.2d at 161. However, given the specificity of the disclosures, Garnett was able to carefully attack the victim’s account in an effort to impeach her regarding her prior inconsistent statements. We do not believe the verbatim statements would have provided Garnett with “such compelling cross-examination as to render an acquittal more likely.” United States v. Wadlington, 233 F.3d 1067, 1076-77 (8th Cir.2000) (where defendant “was already aware of the substance of the government witnesses’ exculpatory and impeaching statements prior to trial, he cannot establish a Brady violation”); see Van Brandy, 726 F.2d at 552 (defense witness “was exhaustively cross-examined” and “his credibility was thoroughly questioned” based on government’s disclosure of exculpatory evidence in the form of detailed summaries).
Upon our review of the record, including an in camera comparison of the verbatim statements to the disclosed summaries, we cannot say that the trial court erred in ruling that the Commonwealth did not suppress any Brady material. Garnett failed to prove a Brady violation because the Commonwealth disclosed the exculpatory evidence. See Wadlington, 233 F.3d at 1076; Grunewald, 987 F.2d at 535; Phillips, 854 F.2d at 278: Van Brandy, 726 F.2d at 551-52; see also Basden v. Lee, 290 F.3d 602, 610-11 (4th Cir.2002) (no Brady violation where defendant had access to most of the information contained in nondisclosed report of witness’ interview).[4] *533 B. Garnett was not prejudiced by the Commonwealth’s disclosure of the summaries of the victim’s statements, *534 instead of the verbatim statements.
Garnett also failed to show he was prejudiced by the nondisclosure of the victim’s verbatim statements, the third element of a Brady claim, in light of the Commonwealth’s disclosure of the summaries of the exculpatory evidence. See Deville v. Commonwealth, 47 Va.App. 754, 756-57, 627 S.E.2d 530, 532 (2006); see also Lemons, 18 Va.App. at 620-22, 446 S.E.2d at 160-61.
In the context of Brady, prejudice is shown if the nondisclosed evidence favorable to the accused is material. Robinson, 231 Va. at 150-51, 341 S.E.2d at 164; see also Deville, 47 Va.App. at 756-57, 627 S.E.2d at 532; Lemons, 18 Va.App. at 620-22, 446 S.E.2d at 160-61. Such “ ‘evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.’ ” Robinson, 231 Va. at 151, 341 S.E.2d at 164 (quoting Bagley, 473 U.S. at 682, 105 S.Ct. at 3383); see Kyles v. Whitley, 514 U.S. 419, 437, 115 S.Ct. 1555, 1567, 131 L.Ed.2d 490 (1995) (nondisclosure of evidence favorable to the accused “does not amount to a Brady violation, without more”); Hillman v. Hinkle, 114 F.Supp.2d 497, 502 (E.D.Va.2000). “[A] constitutional error occurs, and the conviction must be reversed, only if the evidence is material in the sense that its suppression undermines confidence in the outcome of the trial.” Bagley, 473 U.S. at 678, 105 S.Ct. at 3381; see Lovitt v. Warden, 266 Va. 216, 244-45, 585 S.E.2d 801, 817-18 (2003), cert. denied, 541 U.S. 1006, 124 S.Ct. 2018, 158 L.Ed.2d 523 (2004).[5] “In other words, [appellant] must show that when the case is evaluated in the context of the entire record, including the [purportedly] *535 omitted evidence, a jury would have entertained a reasonable doubt” as to appellant’s guilt. Soering v. Deeds, 255 Va. 457, 464, 499 S.E.2d 514, 517 (1998).
We thus consider the cumulative effect of the disclosure of the summaries instead of the recordings and transcripts, to determine on appeal whether such nondisclosure was material and resulted in prejudice. See Lovitt, 266 Va. at 245, 585 S.E.2d at 818; Robinson, 231 Va. at 152, 341 S.E.2d at 165. The crux of the convictions involved what transpired in the barn, not before or afterwards. The evidence established that Garnett pushed her inside the barn, prevented her from exiting, ignored her protests to stop groping her, shoved her upstairs to a secluded area, sexually assaulted, and then raped her. Her physical appearance and demeanor at the police station corroborated her recent complaint. While denying that any assault took place, the defendant conceded he was present with the victim on the day of the offense at the barn, that they were in the barn, and that the victim’s clothes should have been dirty.[6]
Many of the inconsistencies between the victim’s statements and her preliminary hearing testimony concern matters unrelated to the charges or matters that occurred outside the barn.[7] Garnett cross-examined the victim regarding how long she was detained in the barn and regarding any possible bias. Garnett took full advantage of all the inconsistencies the *536 Commonwealth specifically identified and extensively cross-examined the victim on each charge. By acquitting Garnett of two of the charges against him, the jury clearly rejected some of the victim’s testimony.
The Commonwealth’s failure to provide the victim’s verbatim statements, standing alone, was not “of sufficient significance to result in the denial of the defendant’s right to a fair trial.” United States v. Agurs, 427 U.S. 97, 108, 96 S.Ct. 2392, 2400, 49 L.Ed.2d 342 (1976). We have reviewed the evidence presented at trial and considered what effect the verbatim statements might have had on the jury’s verdict. As in Fitzgerald v. Bass, 6 Va.App. 38, 55, 366 S.E.2d 615, 624-25 (1988) (en banc), “we believe that, given the extent to which [the victim’s] credibility was impeached, it is doubtful that additional evidence in this regard would have made a difference in the jury’s opinion of [her] credibility.” On this record, we cannot say there is a reasonable probability that had the verbatim statements been disclosed, the outcome of the trial would have been different. See Lemons, 18 Va.App. at 621-22, 446 S.E.2d at 161 (conviction affirmed where we were “unable to conclude to a reasonable degree of probability that the disclosure of the statement would have affected the outcome of the case”); Robinson, 231 Va. at 152, 341 S.E.2d at 165 (Supreme Court compared evidence at trial with what defendant claimed could have been presented had exculpatory evidence been disclosed earlier and found “there is no reasonable probability that an earlier disclosure would have resulted in a different outcome.”); Deville, 47 Va.App. at 758 n. 2, 627 S.E.2d at 532 n. 2 (we affirmed trial judge’s determination that even if disclosed, the evidence would not have affected the verdict); see also Agurs, 427 U.S. at 108, 96 S.Ct. at 2399-2400; United States v. Ellis, 121 F.3d 908, 918 (1997); Wadlington, 233 F.3d at 1076.
Accordingly, we affirm Garnett’s convictions.

Affirmed.

. The victim lived with Garnett from July 2001 to August 2002. Later in 2002, she terminated their relationship because she did not want "to be involved in a relationship that had violence and aggression." Gar-nett was charged with domestic assault against the victim but those charges were dismissed in September 2001 because she was non-cooperative. She testified that his family urged her not to press charges and he promised to change. She also withdrew a protective order she had against him.

. The offenses for which Garnett was convicted occurred on July 24, 2003. The jury acquitted Garnett on charges for the assaults allegedly occurring on January 19, 2003, and April 29, 2003.

. The trial court stated:
Based on the representations of the Commonwealth's attorney concerning what is covered by those statements, and based on the acceptance of those representations by the defense, the Court will simply confirm that the Commonwealth has a continuing duty to disclose any exculpatory evidence that exists with regard to either of those two statements. The Court will direct the Commonwealth's attorney to review them again prior to trial and disclose any further information to the defense that it deems exculpatory, in light of the hearing that we’ve conducted. Specifically, Mr. Webb, if, in fact, upon subsequent review there are embellishments, additions or supplemental factual statements and assertions that would be exculpatory as opposed to further explanation, ... those would be subject to disclosure. Now based on what you said, I’m not suggesting there are any such statements, and it may well be that there are not, but we’ll simply make that observation that that is one area which we find the defense motion to be well-taken, so we’ll simply direct that you do that.

. The dissent hypothesizes the police conducted at least one additional interview with the victim between the recorded interviews conducted *533 on July 24 and July 31, 2003, and on that basis asserts that Garnett's convictions should be reversed under Brady. Neither the record nor the law supports that assertion. Moreover, even though we now address it, this argument was not made by Garnett on appeal and is thus waived pursuant to Rule 5A:18.
The dissent relies on a discrepancy in the victim’s July 24 and July 31, 2003 interviews. In her July 24th interview, she stated Garnett raped her a total of "two or three times,” and she thought one of those rapes occurred at the end of May 2003. The July 31st interview was conducted in reference to the victim’s allegations that two earlier rapes occurred on January 19, 2003 and April 29, 2003. The discrepancy between the April and May dates did not give rise to a Brady violation. First, the fact the victim initially indicated that one of the three alleged rapes occurred in May was disclosed to Garnett in the Commonwealth's summaries of exculpatory evidence. Second, the victim's subsequent representation as to the specific dates of the two earlier alleged rapes was not necessarily the product of a third interview. Thus, assertions that the police conducted a third interview with the victim and that it "may have contained ‘potentially exculpatory evidence’ ” amount to mere "speculation," which is insufficient to establish a Brady violation. Ramdass v. Commonwealth, 246 Va. 413, 420, 437 S.E.2d 566, 570 (1993), vacated on other grounds, 512 U.S. 1217, 114 S.Ct. 2701, 129 L.Ed.2d 830 (1994), cert. denied after remand, 514 U.S. 1085, 115 S.Ct. 1800, 131 L.Ed.2d 727 (1995); see Lowe v. Commonwealth, 218 Va. 670, 679, 239 S.E.2d 112, 118 (1977) ("critical basic fact” may not be assumed by appellate court where not demonstrated in the record and "conjecture” is insufficient to establish a Brady claim); see also United States v. Agurs, 421 U.S. 97, 109-10, 96 S.Ct. 2392, 2400, 49 L.Ed.2d 342 (1976) ("The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial does not establish ‘materiality’ in the constitutional sense.”); Juniper v. Commonwealth, 271 Va. 362, 394, 626 S.E.2d 383, 404 (2006) (Brady motion may not be used as "a speculative search for evidence” (internal quotation marks omitted)); Hughes v. Commonwealth, 18 Va.App. 510, 516, 446 S.E.2d 451, 461 (1994) ("[sjpeculative allegations” of "the presence of favorable material” is insufficient under Brady). Third, even if the police had conducted additional interviews with the victim, "there is ‘no constitutional requirement that the prosecution make a complete and detailed accounting to the defense of all police investigatory work on a case.’ ” Agurs, 427 U.S. at 109, 96 S.Ct. at 2400 (quoting Moore v. Illinois, 408 U.S. 786, 795, 92 S.Ct. 2562, 2568, 33 L.Ed.2d 706 (1972)); see Ramdass, 246 Va. at 420, 437 S.E.2d at 570 ("[Tjhere is no general constitutional right to discovery in a criminal case, and Brady did not establish one.” (citing Lowe, 218 Va. at 679, 239 S.E.2d at 118)); Goins v. Commonwealth, 251 Va. 442, 456, 470 S.E.2d 114, 124 (1996) (same). Disclosure under Brady extends only to exculpatory evidence. Brady, 373 U.S. at 87, 83 S.Ct. at 1196-97.

. As the United States Supreme Court later explained in Strickler,
the term “Brady violation” is sometimes used to refer to any breach of the broad obligation to disclose exculpatory evidence—that is, to any suppression of so-called "Brady material"—although, strictly speaking, there is never a real "Brady violation” unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict.
Strickler, 527 U.S. at 281, 119 S.Ct. at 1948 (footnote omitted).

. The defendant admitted that he spoke with the victim when she came to his properly, that they went to his mother’s house, and then into the bam. He denied assaulting her or touching her. He conceded "she should have been dirty and muddy because ... these mats were right on this red soil and uhm she had fell ... and that’s the end of it.” When asked if he had sexual relations with the victim that day, the defendant said, "No sir I’m to [sic] wore out from my present girlfriend ... I haven’t been with [the victim] over a month and a half to two months....”

. These facts included when the victim ended her intimate relationship with Garnett, whether Garnett raped her in May, the number of times he previously sexually assaulted her, whether on the day of the offenses they entered the house before going to the bam, and to whom she stated she did not know whether she had been subjected to an oral sexual assault.