COURT OF APPEALS OF VIRGINIA

Present:   Chief Judge Felton, Judges Frank and McClanahan
Argued at Richmond, Virginia


JAMES LEE, JR., S/K/A
  JAMES STEWART LEE
                                                        MEMORANDUM OPINION* BY
v.        Record No. 0211-08-2              JUDGE ELIZABETH A. McCLANAHAN
                                                              MARCH 31, 2009
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Clarence N. Jenkins, Jr., Judge

Ali J. Amirshahi for appellant.

Kathleen B. Martin, Senior Assistant Attorney General (Robert F.
McDonnell, Attorney General, on brief), for appellee.


James Lee appeals his conviction for second-degree murder and use of a firearm in

commission of murder.  He contends the Commonwealth failed to disclose exculpatory evidence

in violation of Brady.[1]  We find there was no Brady violation because the evidence at issue was

not material to Lee's guilt and therefore he was not prejudiced by its nondisclosure.  We affirm

the trial court.

I.  BACKGROUND

Timothy Culley, a neighbor living in Lee's apartment complex, was walking his dog when

he observed Lee talking with Dean Davis, the murder victim, and an unidentified man outside of

Lee's apartment.  Culley observed the three men enter Lee's apartment and then heard two gunshots

fired from within Lee's apartment.  After Culley returned to his own apartment, he observed Lee

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Brady v. Maryland, 373 U.S. 83 (1963).

and the other man leave in Lee's vehicle. The following day, Davis was discovered dead in the trunk of his car. His body was unclothed and partially covered with trash bags. His hands and ankles were bound in duct tape. According to the medical examiner, Davis was shot once in the left side of his head and once in his mouth. Lee admitted shooting Davis but claimed he acted in self-defense during a struggle with Davis for the gun after the unidentified man left his apartment.

In its opening statement at trial, the Commonwealth told the jury about Culley and what his testimony would be. The Commonwealth stated it had "moved" Culley "out of the jurisdiction." No further explanation of this statement was ever given, and Lee did not cross-examine Culley regarding the meaning of that statement or whether Culley had any financial or other arrangements with the Commonwealth.

After trial, Lee filed a motion for exculpatory evidence seeking information regarding compensation provided to any Commonwealth witnesses citing the Commonwealth's statement that Culley was moved out of the jurisdiction. In response, the Commonwealth informed Lee's counsel that it paid two months rent remaining on Culley's lease so that he and his wife could move to a different apartment building. Subsequently, Lee filed a motion to set aside the verdict claiming the failure to disclose this information was a Brady violation. The trial court denied the motion.

## II. ANALYSIS

Lee contends the Commonwealth's payment of rent for Culley was evidence favorable to his defense and should have been disclosed to Lee under Brady. Lee argues had the jury been allowed to hear this evidence, and thus Culley's potential for bias in favor of the Commonwealth, it might have accepted Lee's testimony and acquitted him or convicted him of the lesser charge of manslaughter.[2]

---

[2] According to Lee, Culley was "the Commonwealth's key witness" since he testified Lee left his apartment with the unidentified man after the shooting and therefore "refuted [Lee's] claim that he acted in self-defense."

Due process requires the Commonwealth to disclose to the defendant all favorable evidence material to his guilt or punishment.  Brady v. Maryland, 373 U.S. 83, 87 (1963); see also Youngblood v. West Virginia, 547 U.S. 867, 869 (2006).  There are three components of a Brady violation:  a) The evidence not disclosed must be either exculpatory or impeaching[3]; b) the evidence must have been withheld by the Commonwealth; and c) the defendant must have been prejudiced by the nondisclosure.  Strickler v. Greene, 527 U.S. 263, 281-82 (1999); see also Workman v. Commonwealth, 272 Va. 633, 644-45, 636 S.E.2d 368, 374 (2006); Garnett v. Commonwealth, 49 Va. App. 524, 529-30, 642 S.E.2d 782, 784 (2007) (*en banc*), aff'd, 275 Va. 397, 657 S.E.2d 100, cert. denied, 129 S. Ct. 116 (2008).

Assuming without deciding that the evidence regarding the Commonwealth's payment of rent for Culley was favorable to Lee and suppressed by the Commonwealth, we conclude Lee was not prejudiced by its nondisclosure.  See Teleguz v. Commonwealth, 273 Va. 458, 489, 643 S.E.2d 708, 727 (2007), cert. denied, 128 S. Ct. 1228 (2008).  Lee "must convince us that 'there is a *reasonable probability*' that the result of the trial would have been different if the suppressed [information] had been disclosed to the defense."  Strickler, 527 U.S. at 289 (quoting Kyles v. Whitley, 514 U.S. 419, 434 (1995)) (emphasis added).  "The *mere possibility* that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense."  United States v. Agurs, 427 U.S. 97, 109-10 (1976) (emphasis added).  And

> the materiality inquiry is not just a matter of determining whether, after discounting the inculpatory evidence in light of the undisclosed evidence, the remaining evidence is sufficient to support the jury's conclusions.  Rather, the question is whether 'the

---

[3] Impeachment evidence requiring disclosure may include financial arrangements with prosecution witnesses.  See United States v. Bagley, 473 U.S. 667 (1985); United States v. Levenite, 277 F.3d 454 (4th Cir. 2002).

> favorable evidence could reasonably be taken to put the whole case
> in such a different light as to undermine confidence in the verdict."

Strickler, 527 U.S. at 290 (internal citation omitted) (quoting Kyles, 514 U.S. at 435).

Undoubtedly Culley's testimony that he heard the shots only seconds after the men entered Lee's apartment and before the unidentified man left with Lee weakened Lee's claim of self-defense, but Culley's testimony about what he saw was largely consistent with Lee's testimony. Lee testified he was talking with Davis and his companion when Culley walked by Lee's apartment with his dog. Lee stated all three men entered his apartment and that two gunshots were fired inside his apartment as Culley testified. Lee also admitted leaving his apartment after the shooting. Later that evening, Lee cleaned his apartment with bleach, consistent with Culley's testimony that he smelled a strong odor of cleaning agents when he walked by Lee's apartment.

To the extent Culley's testimony differed from Lee's testimony,[4] Culley was substantially impeached by Lee at trial. Culley admitted he smoked marijuana when he returned to his apartment after hearing the gunshots and before seeing the other man leave with Lee. Culley also admitted he did not call the police right away. Furthermore, Lee called a witness who testified Culley told him he did not know anything about the murder.

Finally, because Culley did not observe what happened inside the apartment and did not see the actual shooting, his testimony was not critical to the Commonwealth's case. Lee admitted he shot Davis twice and did not call for help or notify the police. He admitted removing Davis' clothing, moving the body into the trunk of Davis' car, and driving the car to a different location. Lee's DNA was found on the steering wheel of Davis' car. Davis' blood was

---

[4] Culley's version differed in that he described Davis' companion differently, heard the gunshots ten to fifteen seconds after the men entered Lee's apartment, and saw the other man leave with Lee thirty minutes after hearing the gunshots.

found in Lee's apartment and on a futon where he was shot. Lee's admission he cleaned his apartment with bleach was corroborated by forensic evidence. And Lee's own actions before, during, and after the shooting were contrary to common sense and inconsistent with the actions of an innocent man. Lee allegedly allowed the unidentified man to leave and remained in his apartment alone with Davis, who Lee knew to be a dangerous man and who had access to a gun left for him by the other man. Although Lee argued the shots were fired during a struggle, Lee shot Davis twice in the head and must have been standing over Davis since the gunshot to the left side of the head was fired in a downward direction as Davis was sitting on the futon. Then, after shooting Davis, Lee did not call the police or 911 but left for several hours before returning to remove Davis' clothing, dispose of his body and vehicle, and clean his apartment with bleach.

Although Lee claimed the shots were fired when he was struggling with Davis for the gun and acting in self-defense after the other man left, the jury was free to reject his claim even if it discredited Culley's testimony entirely. See Goodman v. Commonwealth, 37 Va. App. 374, 386, 558 S.E.2d 555, 561 (2002) ("The fact finder is not required to believe all aspects of a witness' testimony; it may accept some parts as believable and reject other parts as implausible.").

Because Lee "has not convinced us that there is a reasonable probability that the jury would have returned a different verdict" if the information regarding the Commonwealth's payment of Culley's rent had been disclosed, Strickler, 527 U.S. at 296, we find the "verdict worthy of confidence," Kyles, 514 U.S. at 434. Thus, the trial court did not commit error in denying Lee's motion to set aside the verdict for a violation of Brady. See Garnett, 275 Va. at 416, 657 S.E.2d at 112.

For the foregoing reasons, we affirm the judgment of the trial court.

<u>Affirmed.</u>