FRANK, J., with whom HUMPHREYS, PETTY, HALEY and ALSTON, JJ.,
join, dissenting.
I do not agree that appellant failed to demonstrate a Brady violation. Therefore, I respectfully dissent from the analysis and judgment in this case.
“A Brady violation occurs when the government fails to disclose evidence materially favorable to the accused.” Youngblood v. West Virginia, 547 U.S. 867, 869, 126 S.Ct. 2188, 2189-90, 165 L.Ed.2d 269 (2006) (citing Brady v. Maryland, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196-97, 10 L.Ed.2d 215 (1963)). The United States Supreme Court has held that Brady obligations extend not only to exculpatory evidence, but also to impeachment evidence, United States v. Bagley, 473 U.S. 667, 676, 105 S.Ct. 3375, 3380-81, 87 L.Ed.2d 481 (1985), and that a Brady violation exists even when the government fails to divulge evidence that is “known only to police investí *14 gators and not to the prosecutor,” Kyles v. Whitley, 514 U.S. 419, 438, 115 S.Ct. 1555, 1568, 131 L.Ed.2d 490 (1995). “[T]he individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government’s behalf in the case, including the police.” Id. at 437, 115 S.Ct. at 1567.
“There are three components of a true Brady violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued.” Strickler v. Greene, 527 U.S. 263, 281-82, 119 S.Ct. 1936,1948-49, 144 L.Ed.2d 286 (1999). Prejudice is shown, and the conviction must be reversed, “ ‘if the evidence is material in that its suppression undermines confidence in the outcome of the trial.’” See Garnett v. Commonwealth, 49 Va.App. 524, 534, 642 S.E.2d 782, 787 (2007) (quoting Bagley, 473 U.S. at 678, 105 S.Ct. at 3381).
The majority states that appellant has established the second component of a Brady violation and assumes, arguendo, that he has also established the first. The only component at issue, therefore, is the third—whether prejudice ensued. Prejudice is “ ‘a reasonable probability that the outcome of the proceeding would have been different had the evidence been disclosed to the defense.’ ” Deville v. Commonwealth, 47 Va.App. 754, 756-57, 627 S.E.2d 530, 532 (2006) (quoting Muhammad v. Commonwealth, 269 Va. 451, 510, 619 S.E.2d 16, 50 (2005)).
The majority relies upon the concept that the “judge is presumed to know the law and apply it correctly in each case.” Crest v. Commonwealth, 40 Va.App. 165, 172 n. 3, 578 S.E.2d 88, 91 n. 3 (2003). The majority reasons that the trial court, by denying appellant’s motion for a new trial, made a factual determination that appellant was not prejudiced by the nondisclosure. To the contrary, an examination of the record demonstrates that the trial judge did express his concerns as to the prejudice suffered by appellant.
*15 While the majority concludes the trial court found no prejudice, its pronouncement at the hearing on appellant’s motion for a new trial on March 30, 2006 belies the majority’s position.
The trial court stated:
[o]ne of the things that really bothers me about it, this man doesn’t even have a traffic ticket. Have you looked at his criminal history? He doesn’t even have a traffic ticket. I mean, he’s got nothing. If they did a presentence on me, I’d have—I’d have traffic tickets in my background. This man doesn’t have anything, and we’re getting ready to hang two felonies on him, on the word of a man that, you know, we dismissed some cases.
After making this statement, the trial court continued the hearing without ruling on the Brady issue and took the matter under advisement. This demonstrates a clear lack of confidence in the verdict. The trial court was obviously concerned about the reliability of Hoyle’s testimony.
The evidence did not change, and no new information came to light, in the interim period after this hearing. The only development before the hearing on October 24, 2007, some nineteen months later, was that appellant tested positive for marijuana. At the second hearing, appellant’s counsel inquired about the procedural status of the case. The trial court responded: “I took the matter under advisement, didn’t find him guilty,[3] gave him a chance to do right ... so basically if he’s in violation today, we’re going to end up with a sentencing hearing is what we’re going to end up with.”
Appellant’s probation officer testified that appellant had not kept in contact with her and had tested positive for marijuana. Hearing that testimony, and with no explanation, the trial court then denied appellant’s motion for a new trial. Appellant’s counsel attempted to explain that appellant’s behavior while the motion was under advisement was unrelated to the *16 issue underlying the motion for a new trial. Counsel stated “what’s happened post-March thirtieth should not affect the grounds raised in the Motion for New Trial.” The trial court interrupted and said, “we’re here on more than that. I mean, we’ve still got to dispose of those two distribution charges.” Appellant’s counsel was not prepared to go forward on sentencing at this hearing on his motion for a new trial, so the trial judge continued the sentencing and stated, “[t]he record will show I’m overruling your motion for a new trial.”
The majority devotes much attention to other evidence that corroborates Hoyle’s testimony. However, it is important to note that the trial court in its statements of March 30, 2006, indicated the convictions were based solely on Hoyle’s testimony. If the trial court considered corroborating testimony, it would not have stated, “we’re getting ready to hang two felonies on [the defendant], on the word of a man that ... we dismissed some cases.” It is apparent the trial court did not consider corroborating evidence.
The majority relegates the trial court’s statements of March 30, 2006 as isolated statements. In order to sustain the majority view, it must, and did, ignore the significance of those statements. To the contrary, the trial court’s expressed concern was the very reason why it did not sentence appellant on March 30, 2006, why it put appellant under supervision and continued the case, and why it gave appellant “a chance to do right.”
On October 24, 2007, when the trial court denied appellant’s motion for a new trial, it expressed its frustration with appellant for not taking advantage of the “break” afforded him by the trial court.
It is clear from an examination of the record appellant’s motion was denied, not because, as the majority speculates, the trial court made a factual finding of no prejudice, but because appellant failed to successfully complete supervision. After the March 30, 2006 hearing, the trial court never again addressed the merits of the Brady violation, other than to deny the motion without explanation.
*17 The record is completely devoid of any evidence that the trial court considered the nondisclosed evidence and indicated that it would have reached the same conclusion with the evidence. This is markedly different from the facts in Deville, 47 Va.App. at 756, 627 S.E.2d at 531-32, where the trial judge stated, unequivocally and on the record, that the nondisclosed evidence would not have made such a difference as to create any prejudice. In that case, this Court stated that there is no prejudice when “‘the trial judge was the trier of fact and, upon learning of the undisclosed information,’ rules unequivocally that the impeachment evidence “would have had no impact’ on the factfinding underlying the defendant’s conviction.” Id. at 757, 627 S.E.2d at 532 (quoting Correll v. Commonwealth, 232 Va. 454, 466, 352 S.E.2d 352, 359 (1987)). This Court went on to say that “[w]hen a trial judge, sitting as ‘both trier of fact and arbiter of law,’ finds the Brady evidence inconsequential, there can be ‘no logical possibility’ that its earlier disclosure ‘would have altered the outcome of the case.’” Id. (quoting Stroik v. State, 671 A.2d 1335, 1340 (Del.1996)).
[A] trial judge’s denial of a Brady motion to vacate a conviction—if predicated on an unequivocal finding of no prejudice in a bench trial—produces a result conceptually no different from that which would follow the granting of the motion, a reopening of the evidentiary record for the new evidence to be admitted, and a reinstatement of the earlier conviction order.
Id. (emphasis added). However, unlike in Deville, the trial judge in the instant case made no such finding. There is no evidence in the record that the trial judge found no prejudice to appellant. To the contrary, he expressed doubt as to the veracity of the informant, which undermines confidence in the verdict.
Clearly, the trial court was bothered by the Commonwealth’s failure to disclose the evidence regarding the informant. In fact, at the March 30, 2006 hearing, the trial court expressed enough concern about Hoyle’s veracity that rather than sentencing appellant, the trial court took the matter *18 under advisement and placed appellant under supervision. At the next hearing on October 24, 2007 (approximately one and a half years later), the trial court overruled appellant’s motion for a new trial. However, the trial court was uncomfortable with the veracity of the informant, and it never retreated from that position. The trial court’s own words from the March 30, 2006 hearing cast doubt on the reliability of its own verdict.
The Commonwealth failed to disclose material information that was favorable to appellant. This nondisclosure prejudiced appellant and undermines confidence in the outcome of his trial as was implied by the trial court. For these reasons, I would conclude that the trial court erred in refusing to grant appellant a new trial. I therefore respectfully dissent.

. It appears appellant was found guilty of the offenses on March 24, 2005, but the conviction order is not part of the record.