UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:   Judges Decker, Russell and AtLee
Argued at Richmond, Virginia


CURTIS LEON FINLEY, A/K/A
  LIL CURTIS

                                                          MEMORANDUM OPINION* BY
v.      Record No. 2127-14-2                      JUDGE RICHARD Y. ATLEE, JR.
                                                              JANUARY 12, 2016

COMMONWEALTH OF VIRGINIA


                    FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                                     Bradley B. Cavedo, Judge

               Joan J. Burroughs (Law Offices of Sara M. Gaborik, on brief), for
               appellant.

               Steven A. Witmer, Senior Assistant Attorney General (Mark R.
               Herring, Attorney General, on brief), for appellee.


        Curtis Finley argues that the Circuit Court for the City of Richmond ("the trial court")

erred when it declined to require the Commonwealth to disclose certain evidence to which Finley

says he was entitled under Brady v. Maryland, 373 U.S. 83 (1963).  We find no error, and affirm

his convictions.

                                    I. BACKGROUND

                                      A. *The Crime*

        We present the facts "in the light most favorable to the Commonwealth, granting to it all

reasonable inferences fairly deducible therefrom." Archer v. Commonwealth, 26 Va. App. 1, 11,

492 S.E.2d 826, 831 (1997) (quoting Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d

415, 418 (1987)).  Viewed through that lens, the facts are as follows.  In June of 2013, Finley

_____

        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

entered the home of his former girlfriend, Sifiya "Yum-Yum" Anderson, and found her in bed with Darvis McLaughlin. Both Finley and McLaughlin were armed with handguns. The two men grappled with each other, then McLaughlin ran out of the house. Finley followed him, and once outside, shot McLaughlin five times, killing him.

Finley testified[1] at trial that McLaughlin had fired a gun at him less than a week before the confrontation in the bedroom. According to Finley, when he exited the house, McLaughlin was pointing a gun at him, so he fired at McLaughlin. Finley testified that, for these reasons, he feared for his life.

The grand jury indicted Finley for the first-degree murder of McLaughlin, as well as for use of a firearm in the commission of the murder.[2]

### B. The Motion to Compel

Several weeks before trial, the Commonwealth provided Finley a "Notice of Victim's Prior Acts of Violence," attached to which were McLaughlin's criminal history as well as police investigative reports detailing past incidents of violent conduct by McLaughlin. Although the reports included the names of the victims and witnesses involved in those incidents, the Commonwealth redacted the corresponding addresses, phone numbers, and birth dates. Finley filed a motion (the "motion to compel") asking the court to require the Commonwealth to reveal the redacted contact information, arguing that Brady required its disclosure.

The trial court denied Finley's motion, finding that the contact information was not exculpatory. Specifically, the trial court ruled from the bench: "If your motion is that I require

---

[1] Although the jury implicitly rejected Finley's version of the facts (as evidenced by its verdict), we present it in this paragraph to explain his self-defense claim, because that claim is the basis for the discovery dispute underlying this appeal.

[2] The grand jury also indicted Finley for a separate attempted first-degree murder and use of a firearm in the commission of that crime. The jury acquitted Finley of those two charges.

the Commonwealth to provide you with un-redacted copies of these incident reports . . . , I'm going to deny that motion. I don't view the address and phone number, [and] birth date information to be exculpatory." Instead, the trial court granted Finley's motion to continue the trial, and authorized funds for an investigator to assist the defense in locating and contacting potential witnesses. The trial court engaged in the following discussion with Finley's trial attorney:

| THE COURT: | [Counsel], do you want Court authorization for a private investigator? |
|---|---|
| [COUNSEL]: | The answer is yes. I intend to do it myself and I'll pay for it myself. I would like authorization for it in case I need it. I think it best for my client to say, no, I'll do it myself and not having that resource. [sic] |
| THE COURT: | I'll authorize up to $500. If it costs more than that, just come back to court and let us know. |

*C. The Trial*

On the day of trial, before trial began, the following discussion took place:

| THE COURT: | Are there any witnesses that you need to have here today to testify for you? |
|---|---|
| THE DEFENDANT: | No, Your Honor. |
| THE COURT: | No? |
| THE DEFENDANT: | No, sir. |
| [COUNSEL]: | Maybe. |
| THE COURT: | Maybe? |
| [COUNSEL]: | I've made some contact. We'll kind of see how it shakes out, but [Finley] and I, we've discussed witnesses and we're-- |
| THE COURT: | Are the "maybe" witnesses here at the courthouse? |

- 3 -

| [COUNSEL]: | The gentleman that I may or may not call was not here when I was out in the hall a half an hour ago. |
|---|---|
| THE COURT: | But you know how to reach him and you've been in touch with him? |
| [COUNSEL]: | I do.  Yes, sir, I have, yesterday. |
| THE COURT: | Is he subpoenaed? |
| [COUNSEL]: | No, sir. |
| THE COURT: | Okay.  All right. |

Finally, the judge asked both Finley and his attorney if they were ready for trial.  Both replied that they were.

After the Commonwealth presented its evidence, Finley testified in his own behalf, then called John Bandy, III, a homicide detective with the City of Richmond Police Department. Detective Bandy testified about a 2008 incident when McLaughlin, who was then a juvenile, fatally shot someone.  As a result, McLaughlin was adjudicated delinquent of a charge of involuntary manslaughter and committed to the Department of Juvenile Justice.

The jury convicted Finley of the lesser-included offense of second-degree murder, as well as use of a firearm in the commission of that crime.  The jury fixed his sentences at fifteen (15) years in the penitentiary for the murder, and three (3) years in the penitentiary for the use of a firearm.  The trial court ultimately imposed such sentences.

## II. ANALYSIS

In 1963, the United States Supreme Court announced a bright-line rule governing a prosecutor's obligation to disclose evidence favorable to an accused:  "[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."  Brady, 373 U.S. at 87.  Later the Supreme Court explained it this way:  "There

are three components of a true <u>Brady</u> violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." <u>Strickler v. Greene</u>, 527 U.S. 263, 281-82 (1999). Thus, to prevail in an appeal alleging a <u>Brady</u> violation, an appellant must show[3] three things: that evidence was suppressed, that it was favorable, and that the defendant was prejudiced as a result. <u>See also</u> <u>Workman v. Commonwealth</u>, 272 Va. 633, 644-45, 636 S.E.2d 368, 374 (2006). The test is conjunctive: failure to prove any one of the three factors is fatal to an appeal alleging a <u>Brady</u> violation. Finley alleges that he has met all three prongs of the <u>Brady</u> test, and is entitled to a new trial. Though the trial court never made a ruling as to whether the information was suppressed, we assume without deciding that Finley has satisfied the first prong of the <u>Brady</u> test. We find, however, that he has satisfied neither the second nor the third, and thus we affirm.

*A. Suppression*

The first prong of the <u>Brady</u> test requires a showing that the Commonwealth suppressed evidence, either intentionally or unintentionally. <u>See</u> <u>Brady</u>, 373 U.S. at 87. Here, the Commonwealth knew of the information Finley sought, and withheld it intentionally, via redaction. For purposes of this analysis, we will assume for the sake of argument that the Commonwealth suppressed the evidence.

*B. Favorability*

The second prong of the <u>Brady</u> test requires that the evidence be "favorable to the accused, either because it is exculpatory, or because it is impeaching." <u>Id.</u> (quoting <u>Skinner v.</u>

---

[3] In appeals alleging a <u>Brady</u> violation, an appellant bears "the burden . . . to show that the trial court erred." <u>Gagelonia v. Commonwealth</u>, 52 Va. App. 99, 112, 661 S.E.2d 502, 509 (2008) (quoting <u>Galbraith v. Commonwealth</u>, 18 Va. App. 734, 739, 446 S.E.2d 633, 637 (1994)).

Switzer, 562 U.S. 521, 536 (2011)). When asserting a Brady error on appeal, "[a] defendant cannot simply allege the presence of favorable material and win reversal of his conviction." Hughes v. Commonwealth, 18 Va. App. 510, 526, 446 S.E.2d 451, 461 (1994) (*en banc*) (quoting United States v. Balliviero, 708 F.2d 934, 943 (5th Cir. 1983)). He "must *prove* the favorable character of evidence he claims has been improperly suppressed. Speculative allegations are not adequate." Id. (emphasis added).

At the outset, we note that, in this instance, the redacted information itself consisted of addresses and phone numbers. This information was not itself favorable to Finley, rather there was a possibility that the information might have enabled him to locate witnesses who might have testified favorably at trial. This is speculation. We do not know if the redacted contact information was still reliable, as the information was several years old. Nor do we know what the witnesses would have said, had they been contacted.

Most importantly, however, we cannot ascribe Finley's inability to contact the witnesses solely to the suppression of the contact information by the Commonwealth, because there is no evidence that Finley himself ever attempted to locate the witnesses.

In his brief, Finley claims that "by blacking out the addresses and phone numbers of individuals involved with McLaughlin's prior bad acts, the Commonwealth deprived defense counsel of any meaningful way to contact these people." However, Finley has not shown that he was denied an opportunity to locate these witnesses, because there is no evidence that he ever tried. As the Commonwealth observed at oral argument, there is a difference between perceived futility and demonstrated futility. When he argued his motion to compel, Finley asserted that it would be difficult, and potentially impossible, to locate the witnesses he sought. He never said, nor does the record show, that he even tried to find the witnesses, let alone tried and failed.

> What we have is a situation where the victims of the prior bad acts,
> names are listed but everything else is blacked out. I have no way
> to find them. . . . I have to work all day and I have to find these
> people at night. I don't have a police force. I'm happy to do that
> because the advocacy requires that I find everybody but I can't do
> a Google search and go to, you know, go to everybody's door in
> Richmond to find out if they were, in fact, a victim of this guy. . . .
> I can't find these people if their names, their Social Security
> numbers, their addresses and their phone numbers are redacted. I
> can try, but it is ineffective assistance of counsel on my part not to
> bring them; but I just don't have the means to find these people.

When the trial court denied his motion to compel, Finley's attorney requested a continuance, advising the trial court that he would need "a long time" to locate witnesses, since he would have to use "search engines." The record does not establish what success he had, or did not have, contacting any of the witnesses.[4] There is no indication in the record that he even tried to locate any of the witnesses contained in the attachment to the "Notice of Victim's Prior Acts of Violence."

It is not clear from the record that Finley took advantage of the money the trial court authorized for an investigator, much less that the amount authorized was inadequate to locate the desired witnesses. Finley never mentions the investigative funds after his unsuccessful motion to suppress. There is no evidence in the record that he returned to the trial court to ask for additional funds, despite the trial court's express invitation to do so. At trial, over three months after the trial court authorized funds for an investigator, Finley never said that he was unsuccessful in locating any of these people. Nor did he object to going forward on the day of

---

[4] Finley's appellate attorney describes a search for one witness using the website "WhitePages.com" that yielded thirty listings. There is no evidence in the record, however, that Finley's trial attorney (a different attorney from his appellate attorney) ever attempted to find any witness through WhitePages.com or any other online search engine.

trial.[5]  For all this Court can tell, Finley successfully contacted all of the witnesses, but none of them offered anything of value to his defense.

We do not expect the trial judge to have presumed that the investigative assistance he authorized was inadequate, unless Finley told the judge this directly.  Nor can we expect the trial judge to have known that Finley was proceeding to trial despite being constitutionally compromised in his ability to obtain favorable information, when both Finley and his attorney explicitly affirmed that they were ready for trial.

We will not presume the favorability of withheld information, especially when Finley failed to demonstrate that he was unable to discover such information using the tools he had.

### C. Materiality

The third prong of the Brady test requires that prejudice have ensued.  "In the context of Brady, prejudice is shown if the nondisclosed evidence favorable to the accused is material." Garnett v. Commonwealth, 49 Va. App. 524, 534, 642 S.E.2d 782, 787 (2007).  "[E]vidence is 'material' within the meaning of Brady when there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different." Commonwealth v. Tuma, 285 Va. 629, 634-35, 740 S.E.2d 14, 17 (2013) (quoting Smith v. Cain, 132 S. Ct. 627, 630 (2012)).  A reasonable probability is "a probability sufficient to undermine confidence in the outcome."  United States v. Bagley, 473 U.S. 667, 682 (1985) (quoting Strickland v. Washington, 466 U.S. 668, 694 (1984)).  "However, it is not necessary to demonstrate 'by a preponderance that disclosure of the suppressed evidence would have resulted ultimately in the defendant's acquittal.'"  Doss v. Commonwealth, 59 Va. App. 435, 456, 719

---

[5] We presume Finley would have made such an objection, had he been unsuccessful in locating the witnesses he sought, given his attorney's previous assertions that "I can't defend this kid without these [witnesses]" and that it would be "ineffective assistance of counsel on my part not to bring them."

S.E.2d 358, 369 (2012) (quoting <u>Coley v. Commonwealth</u>, 55 Va. App. 624, 631, 688 S.E.2d 288, 292 (2010)).

We find that disclosure of the information sought by Finley raises only a possibility, not a reasonable probability, that the result of the proceedings would have been different. As such, the information was not material, and thus no prejudice has been shown.

### III. CONCLUSION

We find that Finley has failed to establish a <u>Brady</u> violation, because he has failed to establish that the information he sought was favorable or that he suffered prejudice as a result of its suppression.

<u>Affirmed.</u>