*868 Per Curiam.
In April 2001, the State of West Virginia indicted petitioner Denver A. Youngblood, Jr., on charges including abduction of three young women, Katara, Kimberly, and Wendy, and two instances of sexual assault upon Katara. The cases went to trial in 2003 in the Circuit Court of Morgan County, where a jury convicted Youngblood of two counts of sexual assault, two counts of brandishing a firearm, and one count of indecent exposure. The conviction rested principally on the testimony of the three women that they were held captive by Youngblood and a friend of his, statements by Katara that she was forced at gunpoint to perform oral sex on Youngblood, and evidence consistent with a claim by Katara about disposal of certain physical evidence of their sexual encounter. Youngblood was sentenced to a combined term of 26 to 60 years’ imprisonment, with 25 to 60 of those years directly attributable to the sexual-assault convictions.
Several months after being sentenced, Youngblood moved to set aside the verdict. He claimed that an investigator working on his case had uncovered new and exculpatory evidence, in the form of a graphically explicit note that both squarely contradicted the State’s account of the incidents and directly supported Youngblood’s consensual-sex defense. The note, apparently written by Kimberly and Wendy, taunted Youngblood and his friend for having been “played” for fools, warned them that the girls had vandalized the house where Youngblood brought them, and mockingly thanked Youngblood for performing oral sex on Katara. The note was said to have been shown to a state trooper investigating the sexual-assault allegations against Young-blood; the trooper allegedly read the note but declined to take possession of it, and told the person who produced it to destroy it. Youngblood argued that the suppression of this evidence violated the State’s federal constitutional obligation to disclose evidence favorable to the defense, and in support *869 of his argument he referred to cases citing and applying Brady v. Maryland, 373 U. S. 83 (1963).
The trial court denied Youngblood a new trial, saying that the note provided only impeachment, but not exculpatory, evidence. The trial court did not discuss Brady or its scope, but expressed the view that the investigating trooper had attached no importance to the note, and because he had failed to give it to the prosecutor the State could not now be faulted for failing to share it with Youngblood’s counsel. See App. C to Pet. for Cert. (Tr. 22-23 (Sept. 25, 2003)).
A bare majority of the Supreme Court of Appeals of West Virginia affirmed, finding no abuse of discretion on the part of the trial court, but without examining the specific constitutional claims associated with the alleged suppression of favorable evidence. 217 W. Va. 535, 548, 618 S. E. 2d 544, 557 (2005) (per curiam). Justice Davis, dissenting in an opinion that Justice Starcher joined, unambiguously characterized the trooper’s instruction to discard the new evidence as a Brady violation. 217 W. Va., at 550-552, 618 S. E. 2d, at 559-561. The dissenters concluded that the note indicating that Youngblood engaged in consensual sex with Katara had been suppressed and was material, id., at 550, n. 6, 618 S. E. 2d, at 559, n. 6 (citing Kyles v. Whitley, 514 U. S. 419, 435, 437-438 (1995)), both because it was at odds with the testimony provided by the State’s three chief witnesses (Katara, Kimberly, and Wendy) and also because it was entirely consistent with Youngblood’s defense at trial that his sexual encounters with Katara were consensual, 217 W. Va., at 551-552, 618 S. E. 2d, at 560-561. Youngblood then filed this petition for a writ of certiorari.
A Brady violation occurs when the government fails to disclose evidence materially favorable to the accused. See 373 U. S., at 87. This Court has held that the Brady duty extends to impeachment evidence as well as exculpatory evidence, United States v. Bagley, 473 U. S. 667, 676 (1985), and Brady suppression occurs when the government fails to turn *870 over even evidence that is “known only to police investigators and not to the prosecutor,” Kyles, 514 U. S., at 438. See id., at 437 (“[T]he individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government’s behalf in the case, including the police”). “Such evidence is material ‘if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different,’ ” Strickler v. Greene, 527 U. S. 263, 280 (1999) (quoting Bagley, supra, at 682 (opinion of Blackmun, J.)), although a “showing of materiality does not require demonstration by a preponderance that disclosure of the suppressed evidence would have resulted ultimately in the defendant’s acquittal,” Kyles, 514 U. S., at 434. The reversal of a conviction is required upon a “showing that the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.” Id., at 435.
Youngblood clearly presented a federal constitutional Brady claim to the State Supreme Court, see Brief for Appellant in No. 31765 (Sup. Ct. App. W. Va.), pp. 42-47, as he had to the trial court, see App. C to Pet. for Cert. (Tr. 6, 44-45, 50, 51 (Sept. 25, 2003)); id., at 13, 17 (Sept. 29, 2003). And, as noted, the dissenting justices discerned the significance of the issue raised. If this Court is to reach the merits of this case, it would be better to have the benefit of the views of the full Supreme Court of Appeals of West Virginia on the Brady issue. We, therefore, grant the petition for certiorari, vacate the judgment of the State Supreme Court, and remand the case for further proceedings not inconsistent with this opinion.

It is so ordered.