# SUPREME COURT OF THE UNITED STATES

## MARCUS A. WELLONS *v.* HILTON HALL, WARDEN

### ON PETITION FOR WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

No. 09–5731.   Decided January 19, 2010

PER CURIAM.

From beginning to end, judicial proceedings conducted for the purpose of deciding whether a defendant shall be put to death must be conducted with dignity and respect. The disturbing facts of this case raise serious questions concerning the conduct of the trial, and this petition raises a serious question about whether the Court of Appeals carefully reviewed those facts before addressing petitioner's constitutional claims.  We know that the Court of Appeals committed the same procedural error that we corrected in *Cone* v. *Bell*, 556 U. S. \_\_\_, \_\_\_ (2009) (slip op., at 17–18).  We do not know how the court would have ruled if it had the benefit of our decision in that case.

Petitioner Marcus Wellons was convicted in Georgia state court of rape and murder and sentenced to death. Although the trial looked typical, there were unusual events going on behind the scenes.  Only after the trial did defense counsel learn that there had been unreported *ex parte* contacts between the jury and the judge, that jurors and a bailiff had planned a reunion, and that "either during or immediately following the penalty phase, some jury members gave the trial judge chocolate shaped as male genitalia and the bailiff chocolate shaped as female breasts," 554 F. 3d 923, 930 (CA11 2009).  The judge had not reported any of this to the defense.

Neither Wellons nor any court has ascertained exactly what went on at this capital trial or what prompted such "gifts."  Wellons has repeatedly tried, in both state and federal court, to find out what occurred, but he has found

himself caught in a procedural morass: He raised the issue
on direct appeal but was constrained by the nonexistent
record, and the State Supreme Court affirmed his convic-
tion and sentence. *Wellons* v. *State*, 266 Ga. 77, 88, 463
S. E. 2d 868, 880 (1995). He sought state habeas relief
and moved to develop evidence. But the court held that
the matter had been decided on appeal and thus was res
judicata. See 554 F. 3d, at 932. He raised the issue again
in his federal habeas petition, seeking discovery and an
evidentiary hearing. But the District Court "concluded
that Wellons' claims . . . were procedurally barred, and
accordingly denied his motion for an evidentiary hearing
on these claims." *Id.*, at 933.[1] Before the Eleventh Cir-

———————

[1] Although the District Court found most of petitioner's claims to be
procedurally barred, it alternatively declined to permit an evidentiary
hearing because Wellons did not have enough evidence of bias or
misconduct. JUSTICE ALITO wrongly suggests that the District Court
reached that conclusion by reviewing a proffer that Wellons' attorneys
assembled by "contacting all but 1 of the jurors," many of whom "spoke
freely." *Post*, at 2 (dissenting opinion). Even apart from the fact that
these interviews were informal and unsworn, they shed almost no light
on what had occurred. The juror who allegedly "gave the penis to the
judge," App. C to Pet. for Cert. 36, was "hostile and refused to talk," *id.*,
at 37; one "refused to talk about the trial," *id.*, at 36; another "did not
want to talk about the case," *id.*, at 37; and one "conferr[ed]" with his
wife who then "slammed and bolted the door," *ibid.* Of those jurors who
were willing to talk at all, one admitted to being "concerned that she
might say something that would be used for a mistrial," *id.*, at 35, and
none admitted to knowing how or why the jury selected its "gifts," see
*id.*, at 35–36, 37. (Implausibly, JUSTICE ALITO suggests that Wellons'
lawyers may not have asked how or why the jury selected its "gifts,"
*post*, at 3, though he bases that speculation only on the fact that no
*questions* appeared in the proffer of *facts*.) Rather, the jurors discussed
other matters and did so in the briefest of terms. All told, "everything
that Petitioner . . . learned," App. C to Pet. for Cert. 38, filled only a few
sheets of paper, see *id.*, at 35–36, 37.

Moreover, the subjects that the jurors did discuss may very well sup-
port Wellons' view that his trial was tainted by bias or misconduct. For
example, one interviewee "was surprised" that a fellow juror had been
allowed to serve on a capital trial, given that her sister had been

cuit, Wellons "argue[d] that the district court erred in denying his motions for discovery and an evidentiary hearing to develop his judge, juror, and bailiff misconduct claims because they are not procedurally barred." *Id.*, at 935. The court disagreed, holding that Wellons' claims were procedurally barred. *Ibid.*

As our dissenting colleagues acknowledge, *post*, at 1 (opinion of SCALIA, J.); *post*, at 1 (opinion of ALITO, J.), the Eleventh Circuit's holding was an error under *Cone,* 556 U. S., at ___ (slip op., at 17–18). "When a state court declines to review the merits of a petitioner's claim on the ground that it has done so already, it creates no bar to federal habeas review." *Id.*, at __ (slip op., at 17). Both dissenting opinions assume that "the issue on which *Cone* throws light does not affect the outcome" because "the Eleventh Circuit . . . also decided that petitioner was not entitled to habeas relief *on the merits.*" *Post*, at 1–2 (opinion of SCALIA, J.). Having found a procedural bar, however, the Eleventh Circuit had no need to address whether petitioner was otherwise entitled to an evidentiary hearing and gave this question, at most, perfunctory consideration that may well have turned on the District Court's finding of a procedural bar.

Although Wellons appealed the denial of "his motions for discovery and an evidentiary hearing," 554 F. 3d, at 935, the Eleventh Circuit did not purport to address the merits of *that* issue at all.[2] The court stated only that "[e]ven if we assume that Wellons's misconduct claims are not procedurally barred, they do not entitle Wellons to

---

murdered by a man after he completed serving a life sentence. *Id.,* at 36.

[2] As JUSTICE ALITO explains at some length, see *post*, at 2–4, the *District Court* did discuss the merits of that issue, but the District Court's analysis has little relevance on whether the Court of Appeals made an alternative holding or rather affirmed the District Court's decision on the ground that petitioner's claim was procedurally barred.

habeas *relief.*" *Id.*, at 936 (emphasis added). This opaque statement appears to address only whether petitioner was entitled to ultimate relief in the form of a new trial, not whether petitioner's allegations, combined with the facts he had learned, entitled him to the discovery and evidentiary hearing that he sought.

The Eleventh Circuit's reasoning does not suggest otherwise. The court observed that Wellons' claims of misconduct were "grounded in his speculation as to the meaning underlying the jurors' chocolate 'gifts'" and "the surmise attached to their passive receipt of these gifts." *Ibid.* This statement likewise indicates only that on the existing record, habeas relief was inappropriate, not that an evidentiary hearing should be denied. After all, had there been discovery or an evidentiary hearing, Wellons may have been able to present more than "speculation" and "surmise." The Eleventh Circuit also pointed to the state court's decision on direct appeal, see *id.*, at 937, and reviewed that decision "[i]n light of the evidence presented before the Georgia Supreme Court," *ibid.* This, too, is typical of a court reviewing the denial of habeas relief, not the denial of discovery or an evidentiary hearing. [3]

_____

[3] JUSTICE ALITO asserts that the Eleventh Circuit "stated in unequivocal terms that its holding on the merits of petitioner's claim was independent of its holding on the question of procedural default." *Post*, at 1. But that does not address the question: The merits of what? The question whether to grant habeas relief or whether to permit discovery and an evidentiary hearing?

Contrary to our dissenting colleagues, *post,* at 4 (opinion of ALITO, J.), we do not find it dispositive that the section of the Eleventh Circuit's opinion about judge, juror, and bailiff misconduct began with a full page statement of the standard of review, which in turn included a sentence about the circumstances under which an evidentiary hearing is warranted. See 554 F. 3d, at 934–935. Immediately following the standard of review that JUSTICE ALITO quotes, the panel explained that "'if the record . . . precludes habeas relief, a district court is not required to hold an evidentiary hearing,'" and that "the record reveals that [Wellons'] claims . . . are procedurally barred." *Id.*, at 935.

Per Curiam

Moreover, even assuming that the Eleventh Circuit intended to address Wellons' motions for discovery and an evidentiary hearing, we cannot be sure that its reasoning really was independent of the *Cone* error. The fact that his claims rested on "speculation" and "surmise" was due to the absence of a record, which was in part based on the *Cone* error. And as the Eleventh Circuit's reasoning turned on "the evidence presented before the Georgia Supreme Court," 554 F. 3d, at 937, there is serious doubt about whether it necessarily relied on the very holes in the record that Wellons was trying to fill.

Our dissenting colleagues allege that the Court is "degrad[ing] . . . our traditional requirements for a GVR." *Post*, at 2 (opinion of SCALIA, J.); see *post*, at 4 (opinion of ALITO, J.). But the standard for an order granting certiorari, vacating the judgment below, and remanding the case (GVR) remains as it always has been: A GVR is appropriate when "intervening developments . . . reveal a reasonable probability that the decision below rests upon a premise that the lower court would reject if given the opportunity for further consideration, and where it appears that such a redetermination may determine the

_____

Moreover, the allegedly "unequivocal" holding that JUSTICE ALITO quotes was preceded by a discussion of the deference owed under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) to the "Georgia Supreme Court's judgment as to the substance and effect of the ex parte communication." *Id.*, at 937. This is the classic formulation of a decision of whether to grant habeas relief. Indeed, it would be bizarre if a federal court had to defer to state-court factual findings, made without any evidentiary record, in order to decide whether it could create an evidentiary record to decide whether the factual findings were erroneous. If that were the case, then almost no habeas petitioner could ever get an evidentiary hearing: So long as the state court found a fact that the petitioner was trying to disprove through the presentation of evidence, then there could be no hearing. AEDPA does not require such a crabbed and illogical approach to habeas procedures, and there is no reason to believe that the Eleventh Circuit thought otherwise.

ultimate outcome" of the matter. *Lawrence* v. *Chater*, 516 U. S. 163, 167 (1996) *(per curiam)*. As already discussed, there is, at least, a "reasonable probability," *ibid.*, that the denial of discovery and an evidentiary hearing rested in part on the *Cone* error. And in light of the unusual facts of the case, a "redetermination may determine the ultimate outcome," 516 U. S., at 167; cf. *Williams* v. *Taylor*, 529 U. S. 420, 442 (2000) (holding that several "omissions as a whole disclose the need for an evidentiary hearing"); *Smith* v. *Phillips*, 455 U. S. 209, 215 (1982) ("This Court has long held that the remedy for allegations of juror partiality is a hearing in which the defendant has an opportunity to prove actual bias"). The Eleventh Circuit's opinion is ambiguous in significant respects. It would be highly inappropriate to assume away that ambiguity in respondent's favor. That is especially so in a case in which petitioner's allegations and the unusual facts raise a serious question about the fairness of a capital trial.

Both dissenting opinions suggest that if there is a strong case for discovery and an evidentiary hearing, then the Court "should summarily reverse or set the case for argument." *Post*, at 2 (opinion of SCALIA, J.); see also *post*, at 4–5 (opinion of ALITO, J.). But as we have explained, "a GVR order conserves the scarce resources of this Court," "assists the court below by flagging a particular issue that it does not appear to have fully considered," and "assists this Court by procuring the benefit of the lower court's insight before we rule on the merits." *Lawrence*, *supra*, at 167.

Unlike JUSTICE SCALIA, *post*, at 3, we do not believe that a "self-respecting" court of appeals would or should respond to our remand order with a "summary reissuance" of essentially the same opinion, absent the procedural default discussion. To the contrary, in light of our decision in *Cone,* we assume the court will consider, on the merits, whether petitioner's allegations, together with the undis-

puted facts, warrant discovery and an evidentiary hearing.

The petition for writ of certiorari to the United States Court of Appeals for the Eleventh Circuit and the motion of petitioner for leave to proceed *in forma pauperis* are granted. The judgment is vacated, and the case is remanded to the Eleventh Circuit for further consideration in light of *Cone* v. *Bell*, 556 U. S., at \_\_\_ (slip op., at 17–18).

# SUPREME COURT OF THE UNITED STATES

## MARCUS A. WELLONS *v.* HILTON HALL, WARDEN

ON PETITION FOR WRIT OF CERTIORARI TO THE UNITED
STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

No. 09–5731.   Decided January 19, 2010

JUSTICE SCALIA, with whom JUSTICE THOMAS joins, dissenting.

Petitioner Marcus Wellons was convicted in Georgia state court of capital murder and sentenced to death. After exhausting direct appeal and state postconviction review, he filed a petition for habeas corpus in federal court under 28 U. S. C. §2254. Wellons claims, among other things, that misconduct on the part of the trial judge, jurors, and court bailiff deprived him of a fair trial. The District Court denied relief, and the Eleventh Circuit affirmed.

Today the Court grants Wellons' petition for certiorari, vacates the judgment of the Eleventh Circuit, and re-mands ("GVRs") in light of *Cone* v. *Bell*, 556 U. S. \_\_\_ (2009). The Eleventh Circuit concluded that Wellons' claims were procedurally barred because the state post-conviction court, noting that the State Supreme Court had rejected them on direct appeal, held the claims were res judicata. See 554 F. 3d 923, 936, and n. 6 (2009). This was error under *Cone*, see 556 U. S., at \_\_\_–\_\_\_ (slip op., at 17–18), as respondent recognizes; indeed, the Eleventh Circuit has already recognized the abrogation of the opin-ion below on this point, see *Owen* v. *Secretary for Dept. of Corrections*, 568 F. 3d 894, 915, n. 23, (2009). But, as JUSTICE ALITO's dissent demonstrates, *post*, p. \_\_\_, the Eleventh Circuit (like the District Court) also decided that petitioner was not entitled to habeas relief *on the merits*. 554 F. 3d, at 936–938. Thus the Court GVRs in light of *Cone* even though the issue on which *Cone* throws light

does not affect the outcome.

The Court has previously asserted a power to GVR whenever there is "a reasonable probability that the decision below rests upon a premise that the lower court would reject if given the opportunity for further consideration, and where it appears that such a redetermination may determine the ultimate outcome of the litigation." *Lawrence* v. *Chater*, 516 U. S. 163, 167 (1996) *(per curiam).* I have protested even that flabby standard, see *id.,* at 190–191 (SCALIA, J., dissenting), but today the Court outdoes itself. It GVRs where the decision below does *not* "rest upon" the objectionable faulty premise, but is independently supported by other grounds—so that redetermination of the faulty ground will assuredly *not* "determine the ultimate outcome of the litigation." The power to "revise and correct for error," which the Court has already turned into "a power to void for suspicion," *id.,* at 190 (same) (internal quotation marks and alteration omitted), has now become the power to send back for a re-do. We have no authority to decree that. If the Court thinks that the Eleventh Circuit's merits holding is wrong, then it should summarily reverse or set the case for argument; otherwise, the judgment below must stand. The same is true if (as the Court evidently believes) the Court of Appeals should have required an evidentiary hearing before resolving the merits question. If they erred in that regard their judgment should be reversed rather than remanded "in light of *Cone* v. *Bell*"—a disposition providing no hint that what we really want them to do (as the Court believes) is to consider an evidentiary hearing.

The systematic degradation of our traditional requirements for a GVR has spawned a series of unusual dispositions, including the GVR so the government can try a less extravagant argument on remand, see *Department of Interior* v. *South Dakota*, 519 U. S. 919, 921 (1996) (SCALIA, J., dissenting), the GVR in light of nothing, see

*Youngblood* v. *West Virginia*, 547 U. S. 867, 872 (2006) (same), and the newly-minted Summary Remand for More Extensive Opinion than Petitioner Requested (SRMEOPR), see *Webster* v. *Cooper*, 558 U. S. ___, ___ (2009) (slip op., at 3). Today the Court adds another beast to our growing menagerie: the SRIE, Summary Remand for Inconsequential Error—or, as the Court would have it, the SRTAEH, Summary Remand to Think About an Evidentiary Hearing.

It disrespects the judges of the Courts of Appeals, who are appointed and confirmed as we are, to vacate and send back their authorized judgments for inconsequential imperfection of opinion—as though we were schoolmasters grading their homework. An appropriately self-respecting response to today's summary vacatur would be summary reissuance of the same opinion, minus the discussion of *Cone.* That would also serve the purpose of minimizing the delay of justice that today's GVR achieves (Wellons has already outlived his victim by 20 years; he committed his murder in 1989).

# SUPREME COURT OF THE UNITED STATES

## MARCUS A. WELLONS *v.* HILTON HALL, WARDEN

ON PETITION FOR WRIT OF CERTIORARI TO THE UNITED
STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

No. 09–5731.    Decided January 19, 2010

JUSTICE ALITO, with whom THE CHIEF JUSTICE joins, dissenting.

The Court's disposition of this case represents a misuse of our authority to grant, vacate, and remand (GVR).  The decision of the Court of Appeals plainly rests on two independent grounds: first, that petitioner procedurally defaulted his claim that the judge, bailiff, and jurors had an inappropriate relationship that impaired his right to a fair trial and, second, that petitioner's claim failed on the merits.  See 554 F. 3d 923, 936 (CA11 2009).  While it is true that the first of these grounds is inconsistent with *Cone* v. *Bell,* 556 U. S. \_\_\_ , \_\_\_ (2009) (slip op., at 17–18), there is no basis for vacating the decision below unless some recent authority or development provides a basis for reconsideration of the second ground as well.  But the *per curiam* identifies no such authority.  Instead, the *per curiam* uses *Cone* as a vehicle for suggesting that the Court of Appeals should reconsider its decision on the merits of petitioner's claim.

In order to defend this disposition, the *per curiam* refuses to credit the Court of Appeals' explanation of the basis of its decision.  The Court of Appeals twice stated in unequivocal terms that its holding on the merits of petitioner's claim was independent of its holding on the question of procedural default.  See 554 F. 3d, at 937–938 ("[E]ven if these claims were properly before us on habeas review, we would not disturb the Georgia Supreme Court's conclusion on the merits of these claims"); *id.,* at 936 ("Even if we assume that Wellons's misconduct claims are

not procedurally barred, they do not entitle Wellons to habeas relief"). But the *per curiam* states that the Court of Appeals' consideration of the merits "may well have turned on the District Court's finding of a procedural bar" and that "we cannot be sure that [the panel's] reasoning really was independent of the *Cone* error." *Ante*, at 3, 5.

Even worse, the *per curiam* unjustifiably suggests that the Court of Appeals gave at most only "perfunctory consideration" to petitioner's claim that he was entitled to an evidentiary hearing and may not have "carefully reviewed" the relevant facts. *Ante*, at 3, 1. The majority may not be satisfied with the Court of Appeals' discussion, but the majority has no good reason for suggesting that the lower court did not give the issue careful consideration.

The District Court refused petitioner's discovery request on the ground that petitioner did not make a sufficient showing to warrant interrogation of the jurors. As the detailed opinion of the District Court reveals, the state habeas judge allowed petitioner's attorneys to contact all of the jurors and relevant court personnel; the attorneys succeeded in contacting all but 1 of the jurors; 6 of the 11 jurors who were contacted, as well as the bailiffs and court reporter, were interviewed; and the attorneys made a proffer of the information provided by these interviewees.[1] There is no suggestion that the attorneys were restricted in the questions that they were permitted to ask the interviewees, and it appears that the jurors who were interviewed spoke freely, even discussing their understanding of the judge's instructions on the law and the jury's delib-

___

[1] As the District Court observed, "[p]etitioner's state habeas corpus counsel contacted all but one of the jurors seeking their comments." App. C to Pet. for Cert. 34. The proffer shows that six jurors were interviewed: DeArmond, *id.*, at 35, Henry, *ibid.*, Givhan, *id.*, at 36, Humphrey, *id.*, at 37, Moore, *ibid.* and Smith, *ibid.* The Court's description of some of the matters that the jurors mentioned during the interview confirms that these jurors "spoke freely." See *ante,* at 2, n. 1.

erations.[2]  Cf. Fed. Rule Evid. 606(b).  Interestingly, the proffer does not reflect that the attorneys asked any of the jurors what would appear to be the most critical question, namely, why the strange gifts were given to the judge or the bailiff.[3]  See App. C to Pet. for Cert. 34–38.  If any such questions had been asked and answers favorable to petitioner's position had been provided, one would expect that information to appear in the proffer.

After examining the proffer made by petitioner's attorneys, the District Court concluded that this submission did not justify formal discovery.  With respect to what the *per curiam* describes as the "unreported *ex parte* contacts between the jury and the judge," *ante*, at 1—which apparently consisted of a brief exchange of words that occurred

––––––––––

[2] The *per curiam* assumes that the jurors who were interviewed must have spoken only "in the briefest of terms" because "'everything that Petitioner. . . learned'" "filled only a few sheets of paper." *Ibid.*  The mere fact that the unsworn proffer submitted by petitioner's state habeas counsel consisted of four pages, see App. C to Pet. for Cert. 35–38, does not seem to me to provide a sufficient basis for concluding that the jurors interviewed spoke only "in the briefest of terms."  The length of the proffer is equally consistent with the possibility that the jurors interviewed spoke at length but did not supply information that petitioner's counsel deemed helpful to his case.

[3] The main reason for the interviews was to inquire about the gifts, and the proffer shows that the jurors who were interviewed discussed this matter.  See, *e.g.*, App. C to Pet. for Cert. 35 (a juror "stated that 'we,' the jurors gave a pair of chocolate breasts to the bailiff and the chocolate penis just followed"); *ibid.* (a juror "stated that some of the jurors decided to send a pair of edible chocolate breasts to one of the female bailiffs and an edible chocolate penis to the trial judge"); *id.*, at 37 (a juror "remembered discussion about giving a chocolate penis to the judge").  Nevertheless, petitioner's proffer includes no information as to *why* the gifts were given—not even a statement to the effect that the jurors interviewed were asked this question and said that they did not know.  Cf. *id.*, at 35 (noting that a particular juror "did not know *whose idea it was* to send the chocolate penis to the judge," but not including any representation as to her understanding of *why* the gifts may have been given (emphasis added)).

when the judge entered the room in a restaurant where the jurors were dining—the District Court concluded that "nothing that Petitioner has presented provides even the slightest indication that anything more than a simple greeting occurred," App. C to Pet. for Cert. 43.

With respect to the gifts that were given to the judge and a bailiff after the trial ended, the District Court stressed that they were "inappropriate" and represented "an unusual display of poor taste in the context of a proceeding so grave as a capital trial," *ibid.*, but the Court noted that petitioner had not proffered any evidence that any of the jurors or court personnel who were interviewed had said anything that substantiated the assertion that "an inappropriate relationship existed between the judge, the bailiff, and the jury," *id.*, at 44.

A fair reading of the Court of Appeals' opinion is that that court likewise held that petitioner was not entitled to the discovery he sought because that discovery was unlikely to yield evidence substantiating his claim. See 554 F. 3d, at 935 (quoting *Schriro* v. *Landrigan*, 550 U. S. 465, 474 (2007) ("When deciding whether to grant a federal habeas petitioner's request for an evidentiary hearing, 'a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief' ")).

I agree with the Court that the strange and tasteless gifts that were given to the trial judge and bailiff are facially troubling, and I am certainly not prepared at this point to say that the decision below on the discovery issue was correct. But unlike the Court, I do not think it is proper for us to use a GVR to address this matter. The lower courts have decided the discovery issue, and now this Court has two options. First, if we wish to review the question whether petitioner made a sufficient showing to justify interrogation of the jurors, we should grant the

petition for a writ of certiorari and decide that question. Second, if we do not wish to tackle that fact-bound question, we should deny review or GVR in light of a recent authority or development that casts doubt on the judgment of the court below. What the Court has done—using a GVR as a vehicle for urging the Court of Appeals to reconsider its holding on a question that is entirely independent of the ground for the GVR—is extraordinary and, in my view, improper.