NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 10-4634

_____

UNITED STATES OF AMERICA

v.

JOSPEH P. DONAHUE,

Appellant

_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(No. 3-08-cr-00221-001)
District Judge:  Hon. James M. Munley

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
Submitted January 24, 2012

_____

Before:  AMBRO, CHAGARES, and HARDIMAN, Circuit Judges.

(Filed: January 30, 2012)

_____

OPINION

_____

CHAGARES, Circuit Judge.

A jury convicted Joseph P. Donahue of four counts of bank fraud, ten counts of

using a credit card with intent to defraud, one count of money laundering, and one count

of false statements, all of which related to a series of schemes in which Donahue persuaded his victims to join his business ventures and then appropriated their identities to make unauthorized purchases and to obtain additional lines of credit without his victims' knowledge. Donahue now appeals his convictions, arguing the District Court erred by denying his motion for a judgment of acquittal or a new trial based on the Government's alleged Brady violation and alleged violations of Federal Rules of Evidence 403 and 404(b). We will affirm.

I.

We write solely for the parties' benefit and thus recite only the facts essential to our disposition. Because this appeal comes to us following a jury's guilty verdict, we set forth the facts as viewed in the light most favorable to the Government.

On January 6, 2010, a federal grand jury returned a sixteen-count indictment[1] charging Donahue with four counts of bank fraud, in violation of 18 U.S.C. § 1344, ten counts of using a credit card with intent to defraud, in violation of 18 U.S.C. § 1029, one count of money laundering, in violation of 18 U.S.C. § 1956(a)(1)(A), and one count of false statements, in violation of 18 U.S.C. § 1001. The majority of these charges were based on Donahue's scheme to "enlist and recruit shareholders, investors and partners in various businesses that [he] owned and controlled," obtain credit cards in his victims' names for the purpose of paying the businesses' operating expenses, and then use these approved credit cards for personal expenses and open up new lines of credit in his victims' names without their authorization. Appendix ("App.") 67-69. Donahue was

_____

[1] The term "indictment" refers to the Second Superseding Indictment.

2

also charged with knowingly making six false statements to FBI agents upon being questioned about the above activities (Count 14).  App. 92-94.

On April 1, 2009, Donahue entered a plea of not guilty to the indictment.  A unanimous jury subsequently convicted Donahue on all sixteen counts following an eight-day trial that concluded on March 4, 2010.  On December 3, 2010, the District Court sentenced Donahue to a term of 121 months of imprisonment and five years of supervised release.  The District Court also ordered Donahue to pay $325,414.67 in restitution.  This appeal followed.

## II.

The District Court had jurisdiction under 18 U.S.C. § 3231, and we have jurisdiction under 18 U.S.C. § 3742 and 28 U.S.C. § 1291.

## III.

## A.

On appeal,[2] Donahue first contends the District Court erroneously refused to grant him a new trial or enter a judgment of acquittal based on the Government's failure to inform Donahue that FBI Special Agent Michael Baumgardner had likely committed perjury during his testimony at the suppression hearing and at trial, which Donahue alleges constitutes a violation of Brady v. Maryland, 373 U.S. 83 (1963).  When analyzing a Brady claim, we exercise plenary review of the District Court's conclusions

---

[2]  The Government argues that we should exercise our authority under the Fugitive Disentitlement Doctrine to dismiss Donahue's appeal because, after filing a notice of appeal, he failed to self-surrender on the appointed date and was a fugitive until he was captured sixteen days later.  Because Donahue's appeal fails on the merits, we need not address this argument.

of law and we review its findings of fact for clear error. United States v. Pelullo, 14 F.3d 881, 886 (3d Cir. 1994).

Under Brady, "the suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87. Evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." Strickler v. Greene, 527 U.S. 263, 280 (1999) (quotation marks and citation omitted). In assessing a potential Brady violation, we take into account the potential effect of the missing evidence "in light of the totality of the circumstances and with an awareness of the difficulty of reconstructing" the way the proceedings would have occurred if the missing evidence had been included. United States v. Bagley, 473 U.S. 667, 683 (1985) (plurality opinion). A conviction may be reversed under Brady only "upon a showing that the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." Youngblood v. West Virginia, 547 U.S. 867, 870 (2006).

At issue here is the testimony of Baumgardner regarding whether or not he told Donahue during interrogation that "Gordon Zubrod says, 'Hello.'"[3] During the suppression hearing held on February 5, 2010, Baumgardner testified about Donahue's statements during an interview that he and FBI Special Agent James Glenn conducted at

---

[3] Zubrod is the Assistant United States Attorney responsible for an earlier prosecution of Donahue. He is also representing the Government in the instant matter.

4

Donahue's office. Supplemental Appendix ("Supp. App.") 13-17. The false statements made by Donahue during this interview, which included claiming that he had not been involved in business dealings with victim Scott Carey and that he was unfamiliar with the address where his girlfriend and their two children resided, form the basis for Donahue's conviction on Count 14 of the indictment. Regarding the challenged statement, Baumgardner testified at the suppression hearing that he told Donahue that Zubrod would be prosecuting his case, but responded that he did not "recall" telling Donahue that Zubrod said hello. Supp. App. 36-37. At trial, Baumgardner again testified regarding Donahue's false statements during the interview and explained that he had indicated to Donahue that Zubrod would be the prosecutor assigned to his case. Baumgardner was not specifically asked whether he had made the challenged "hello" statement.

Following Baumgardner's trial testimony, Glenn testified that the written report of the Donahue meeting was accurate in all respects except insofar as it omitted Baumgardner's statement to Donahue that "Gordon Zubrod says, 'Hello.'" App. 1226. Donahue also testified that Baumgardner made this statement to him. App. 1542. Donahue admitted during his trial testimony that he had answered the agents' questions untruthfully and stated that he would have done so even if Donahue had not made the "hello" statement because he was "under tremendous duress." Id.

While the trial was ongoing, Zubrod informed an FBI supervisory agent that he was concerned Baumgardner had committed perjury, and the decision was made to remove Baumgardner from the case. Supp. App. 1. Baumgardner did not respond positively to this development. Id.

5

Under these circumstances, we agree with the District Court that no <u>Brady</u> violation occurred. Although Donahue argues vociferously that he was entitled to know immediately about Zubrod's concerns related to Baumgardner's truthfulness and Baumgardner's response to his removal from the case,[4] such information was immaterial because the result of this case would not have been different even if we assume (without deciding) that this information should have been disclosed.[5] Glenn corroborated Baumgardner's testimony regarding the FBI report of the meeting with Donahue and the statements Donahue made therein, and Donahue himself admitted that he had made false statements to the agents. Thus, even if the information sought by Donahue had been disclosed during trial, this information could not "reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." <u>Youngblood</u>, 547 U.S. at 870.

B.

Donahue also argues that evidence of other bad acts was improperly admitted in violation of Federal Rules of Evidence 404(b) and 403. We review this claim for abuse of discretion. <u>United States v. Kemp</u>, 500 F.3d 257, 295 (3d Cir. 2007). "The 'admission of evidence is an abuse of discretion if the district court's action was arbitrary, fanciful or clearly unreasonable,' and 'we will not disturb a trial court's exercise of discretion unless

---

[4] Donahue also argues that the communications related to Baumgardner's testimony may refer to other statements which constitute perjury, but there is no evidence to support this argument. Donahue Br. 21-23.

[5] Regarding Baumgardner's response to being removed from this case, we cannot see how the Government had any obligation to disclose this information because it had no bearing on the elements of the charged crimes and would likely have been inadmissible for impeachment purposes.

6

no reasonable person would adopt the district court's view.'" United States v. Starnes, 583 F.3d 196, 214 (3d Cir. 2009) (internal punctuation omitted) (quoting Ansell v. Green Acres Contracting Co., 347 F.3d 515, 519 (3d Cir. 2003)). We exercise plenary review, however, over the District Court's legal interpretation of the Federal Rules of Evidence and over any determination made by the District Court as to whether evidence falls within the scope of Rule 404(b). United States v. Green, 617 F.3d 233, 239 (3d Cir. 2010).

Donahue's argument appears to relate to the testimony of three Government witnesses – Steven Porpora, Stephen Kelley, and Steve Peters – who testified about uncharged conduct by Donahue which was substantially similar to that charged in the indictment.[6] All three witnesses testified that they were involved in businesses with Donahue and had their credit used in an unauthorized manner. Donahue asserts that this evidence was admitted erroneously because it was introduced for the purpose of showing "that Donahue had done allegedly dishonest or questionable things before, in a similar fashion, and he therefore is likely to have done it again." Donahue Br. 26.

Federal Rule of Evidence 404(b) prohibits the introduction of "[e]vidence of other crimes, wrongs, or acts" for the purpose of "prov[ing] the character of a person in order to show action in conformity therewith." Such evidence may be admitted, however, "for other purposes, such as proof of motive, opportunity, intent, preparation, plan,

---

[6] Donahue also mentions the testimony of a bank employee and two of his businesses' former employees, apparently for the purpose of arguing that the admission of certain parts of these witnesses' testimony was erroneous. Donahue Br. 7-8. Because this testimony is clearly relevant to the charged conduct and does not appear to violate any evidentiary rules, this argument is without merit.

knowledge, identity, or absence of mistake or accident," so long as "the prosecution in a criminal case [provides] reasonable notice in advance of trial . . . of the general nature of any such evidence it intends to introduce at trial." Id. Thus, we have held that evidence of other acts may be admitted under Rule 404(b) when it (1) has a proper evidentiary purpose, (2) is relevant under Rule 402, (3) is not substantially more prejudicial than probative as required by Rule 403, and (4) is accompanied by a limiting instruction, when such an instruction is requested. United States v. Cross, 308 F.3d 308, 321 (3d Cir. 2002).[7]

Under these circumstances, the District Court did not abuse its discretion in determining that the testimony of Porpora, Kelley, and Peters satisfied Rule 404(b). This evidence was relevant for the purpose of showing that Donahue had long employed a common plan or scheme to defraud his victims, and for showing his intent when committing the charged crimes. This evidence was also not substantially more prejudicial than probative, given that it aided the jury in understanding the credit scheme devised by Donahue and was substantially similar to the testimony of the witnesses whose victimization was charged in the indictment. Moreover, as Donahue concedes, the

---

[7] The Government argues that Rule 404(b) should not apply to the evidence at issue because it is "intrinsic" to the charged offenses. Gov't Br. 36-37. Evidence may be deemed "intrinsic" if it "directly proves the charged offense" or if it constitutes an "uncharged act[] performed contemporaneously with the charged crime [which] facilitate[s] the commission of the charged crime." United States v. Green, 617 F.3d 233, 248-49 (3d Cir. 2010) (internal punctuation and citations omitted). Because the testimony at issue here does not fit neatly into either category of intrinsic evidence, we believe it is best analyzed under Rule 404(b).

District Court provided an appropriate limiting instruction.  Thus, the Rule 404(b) elements are satisfied.

## IV.

For the foregoing reasons, we will affirm the judgment of conviction.