FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON

2014 MAR 10 PM 2: 11

# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

In the Matter of the Personal Restraint of ) No. 61853-9-I
)
RAYMOND McCOY, ) DIVISION ONE
)
      Petitioner. ) UNPUBLISHED OPINION
)
) FILED: March 10, 2014

GROSSE, J. — To prevail on a Brady[1] claim, a defendant must show that the State suppressed evidence favorable to the defendant as a result of which the defendant was prejudiced. Here, an informant identified the defendant as the perpetrator in three bank robberies. Evidence established that the defendant was unaware that the informant was a paid confidential informant for the Federal Bureau of Investigation (FBI) and had previously provided false information in an unrelated case. The State concedes that the informant's identification was material in two of the bank robberies and that those convictions should be reversed because of the Brady violation. But the State argues that the third conviction should be affirmed because the undisclosed evidence did not affect the outcome of the trial. We accept the State's concession as to those two convictions and agree that there was sufficient independent evidence to identify the defendant as the perpetrator in the third conviction. Accordingly, we reverse the two convictions for the robberies, but affirm the third conviction.

---

[1] Brady v. Maryland, 373 U.S. 83, 87, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963).

FACTS

Raymond McCoy was convicted of three counts of first degree robbery for a series of bank robberies. We affirmed the judgment and sentence on direct appeal.[2] Acting pro se, McCoy filed a personal restraint petition with this court. While the petition was pending, the State, without informing this court, advised McCoy that one of the State's key witnesses, Kevin Olsen, may have lied during his testimony. This court dismissed the personal restraint petition finding that all of McCoy's concerns had been considered and rejected in his direct appeal. We did not address the Brady issue surrounding Olsen's testimony.

The Supreme Court granted McCoy's motion for discretionary review and permitted him to supplement the record with the information that he had received from the State regarding Olsen's status as a confidential informant. The Supreme Court remanded the petition to the Court of Appeals with directions to refer the matter to superior court for a reference hearing pursuant to RAP 16.11. The matter was remanded. McCoy acted pro se through the reference hearing. The superior court transmitted its findings to this court. We determined that the petition raised a non-frivolous issue and appointed counsel to represent McCoy.

McCoy appeals, arguing that the failure to inform McCoy about Olsen violated his right to due process and requires reversal of all three convictions. The State concedes that the Brady violation was material in two of the convictions but argues that it was not with regard to the conviction for the robbery of Key Bank because there was substantial forensic evidence to identify McCoy as the perpetrator.

---

[2] State v. McCoy, noted at 145 Wn. App. 1049 (2008).

ANALYSIS

In Brady v. Maryland, the Supreme Court held that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."[3] Evidence is material only if there is a reasonable probability that had the prosecution disclosed the evidence to the defense, the proceeding would have had a different result.[4] In other words, when the credibility of a witness may be determinative of guilt, the failure of the prosecutor to disclose material evidence regarding that witness's credibility violates due process and requires a new trial if there is a reasonable likelihood that the absence of such evidence affected the jury's determination. Applying the "'reasonable probability'" standard, "the question is whether the defendant received a fair trial without the evidence—that is, 'a trial resulting in a verdict worthy of confidence.'"[5]

Olsen and McCoy were in jail at the same time. The two researched evidentiary issues in their cases and checked the law on evidence. They shared information regarding fingerprint and identification issues. Olsen testified that McCoy had told him that the trainee at Sterling Savings Bank had identified him "almost to a T," whereas the more experienced teller was not able to do so. McCoy also relayed to Olsen that he had snatched money from the hand of the teller at Sterling Savings Bank, as described

---

[3] 373 U.S. at 87.

[4] State v. Thomas, 150 Wn.2d 821, 850, 83 P.3d 970 (2004) (quoting United States v. Bagley, 473 U.S. 667, 682, 105 S. Ct. 3375, 87 L. Ed. 2d 481 (1985)); In re Pers. Restraint of Benn, 134 Wn.2d 868, 916, 952 P.2d 116 (1998) (quoting Bagley, 473 U.S. at 682).

[5] Thomas, 150 Wn.2d at 850-51 (quoting Kyles v. Whitley, 514 U.S. 419, 434, 115 S. Ct. 1555, 131 L. Ed. 2d 490 (1995)).

in the teller's testimony. Additionally, Olsen testified that he wrote down the information McCoy gave him because he was in contact with authorities and planned to share the information with them. With regard to Key Bank, Olsen testified that McCoy was discouraged because he had left a palm print and the two strategized about McCoy stating that he was at the bank previously and that must have been when the print was left. Olsen testified that he had not received any promises of leniency for his testimony. Olsen was impeached with his prior crimes. However, subsequent to trial, and McCoy's direct appeal, McCoy learned that Olsen was a paid FBI informant and that he had made false incriminating statements regarding a defendant in an unrelated trial.

The State concedes that the identification by witnesses was material in both the Sterling Savings Bank and U.S. Bank robberies. In both of those counts, I and III respectively, McCoy's identification as the robber was established through photomontage picks and in-court identifications of widely varying degrees of consistency and certainty.[6] There was no other independent evidence. However, in count II, the robbery of Key Bank, substantive forensic evidence independently established McCoy as the perpetrator. Tuan Le, the teller, testified that the robber placed his hand on the counter in front of his teller window during the robbery. Shortly after the robbery, the police lifted two latent fingerprints from the counter in front of Le's teller window. Testimony from Key Bank's janitorial service indicated that the evening before the robbery, teller Le's counter was thoroughly cleaned with a rag and cleaning solution. McCoy testified that he went to the bank the morning of the robbery to change

---

[6] McCoy's photograph in the montage had the darkest complexion. McCoy was the only black male in the courtroom when the witnesses made in-court identification. Also, some of the witnesses had seen McCoy in handcuffs in the hall outside the courtroom.

some coins into dollars. McCoy asserted that it was then that he placed his hand on Le's counter. However, bank records established that the teller's window was closed until noon when Le reported for work.

Under the "reasonable probability" standard, McCoy's trial resulted in a verdict "worthy of confidence." McCoy has failed to satisfy the third prong of the Brady test, that is, whether "'the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.'"[7] The evidence was not material in the sense that if it had been disclosed to the defense, there is no reasonable probability that the result of the proceeding would have been different.[8] Thus, the impact of impeachment evidence "may not be material if the . . . other evidence is strong enough to sustain confidence in the verdict."[9] There was more than sufficient evidence to establish McCoy's guilt as the robber in that instance.

In a separate motion, McCoy also objects to the trial court's findings of fact and requests that this court remand the case for another reference hearing to determine whether the State knew that Olsen had provided false information in a different case. Exhibit 5 conclusively established that Olsen provided false information in that unrelated trial and further that both the King County detective and FBI agent were involved with that incident. That knowledge was constructively implied to Detective Dag Aakervik and the prosecutor. Actual knowledge is irrelevant under Brady if the evidence in question is in the possession of a member of the prosecution team, as it was here.[10] Thus, the

---

[7] Youngblood v. West Virginia, 547 U.S. 867, 879, 126 S. Ct. 2188, 165 L. Ed. 2d 269 (2006) (quoting Kyles, 514 U.S. at 435).
[8] Strickler v. Greene, 527 U.S. 263, 281-82, 119 S. Ct. 1936, 144 L. Ed. 2d 286 (1999).
[9] Smith v. Cain, __ U.S.__, 132 S. Ct. 627, 629, 181 L. Ed. 2d 571 (2012).
[10] See Kyles, 514 U.S at 437.

trial court's finding that neither Detective Aakervik nor the trial prosecutor were aware of the impeachment evidence is of no import.

Nor did the trial court err in denying McCoy's request for overly broad subpoenas duces tecum. The purpose of the reference hearing was to discover whether there was evidence that Olsen was a paid informant of the FBI who had given false information in a prior case. This the trial court did. There was no need for additional evidence. Should the State decide to refile the charges against McCoy on the two bank robberies, the issue of whether additional evidence is needed at that time may be addressed by the trial court.

We accept the State's concession and reverse the two robbery convictions for Sterling Savings Bank and US Bank, and affirm the conviction for the robbery of Key Bank.

WE CONCUR:

6