EDWARDS, J.
Emmanuel Butler was found guilty by a jury of first-degree murder. The State appeals the trial court's order giving Butler a new trial based on the trial court's finding that the State's failure to disclose certain information about a witness, Brodie Hamilton, hindered Butler's cross-examination regarding that witness's credibility. We agree that the trial court committed reversible error, and we remand for entry of a judgment consistent with the jury's verdict.
Butler's conviction was based in part on recorded conversations obtained by Hamilton, a man who had prior felony convictions and was facing prison on new charges. Hamilton approached the state attorney's office seeking probation instead of prison on the new charges if he could provide law enforcement with recorded conversations of Butler and another man, Miller, regarding this crime. The state attorney's investigators did not trust Hamilton, as he had lied to them before; however, they were willing to arrange for Hamilton to meet with Butler and Miller, separately, while Hamilton wore both an audio transmitter and an audio recording device.
In the recorded conversation, Butler told Hamilton that he went after the victim when he saw the brand new car the victim was driving; however, the victim had no cash when Butler confronted him at the victim's apartment complex laundry room. Butler told Hamilton that he killed the victim with a .357 caliber gun.
The medical examiner's testimony confirmed that the fatal bullet came from a medium-sized revolver, such as a .357. At trial, the state introduced two images of Butler holding a .357 revolver that he had posted on his Facebook page, one a week before and the other a week after the murder.
The jury was shown surveillance video from the date of the murder depicting the victim arriving at his apartment complex in a white Mitsubishi, going into the apartment complex, and being followed in by an unidentified male figure. Shortly afterwards, the same car is seen leaving that complex at a relatively high speed. Video from a different apartment complex shows the same car and a male figure talking on a cell phone as he leaves the car. The date and time stamp of the video corresponded with one of the many cell phone calls between Miller and Butler. The State also introduced a recorded phone call between Butler and his girlfriend in which Butler, using code, could be understood to admit to the crimes. The jury listened to the recordings of Butler and Hamilton and of Butler and his girlfriend when initially published at trial and again during deliberations.
*197 By agreement of the parties Hamilton did not testify at trial. The State laid the foundation for introduction of Hamilton's recording of Butler's confession through the testimony of an investigator from the state attorney's office. That investigator testified that Hamilton had about ten prior felony convictions and was facing serious narcotics related criminal charges with possible prison time of fifteen years or more. The investigator told the jury that Hamilton came to them looking for a deal where he could receive probation instead of prison time on the open charges. During cross-examination by Butler's lawyer, the investigator repeated the information about Hamilton's background and his motivation for recording Butler. The investigator then confirmed to defense counsel that Hamilton had lied to them about the extent of his own knowledge of the crime. The investigator made it clear that Hamilton's recitation of any conversation with Butler was of no interest; it had to be a recorded conversation because the investigator did not trust Hamilton. Furthermore, a police officer testified at trial that he did not trust Hamilton. Thus, even though he did not testify, Hamilton's motivation and credibility were thoroughly developed at trial.
After the verdict was returned, but before Butler was sentenced, the State learned that Hamilton had received one hundred dollars from the police to buy a bus ticket to go to his mother's house and that he received two hundred dollars from Crime Stoppers for providing information about the crime. The police agreed to provide him with money for the bus ticket because Hamilton and Butler were members of the same gang, and there was concern for Hamilton's safety after he "ratted out" Butler to the police. The Crime Stoppers reward of two hundred dollars was paid by the victim's family as part of an overall reward offered of fifteen thousand dollars. The police officers had no recollection of providing any of this information to the State prior to trial.
The State promptly disclosed this information to Butler, who asserted that it was a Brady[1] violation and that if he had this information earlier he would have been able to more effectively cross-examine and impeach Hamilton. At the hearing on Butler's Brady motion, the trial court agreed that nothing in the recently disclosed information would change what was in the recorded conversation between Butler and Hamilton. Nevertheless, the trial court concluded it was a Brady violation and that Butler was entitled to a new trial.
"The Brady rule requires that the prosecution not suppress evidence favorable to an accused where that 'evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.' " Boyd v. State , 910 So.2d 167, 179 (Fla. 2005) (quoting Brady , 373 U.S. at 87, 83 S.Ct. 1194 ). Thus, a " Brady violation occurs 'when the government fails to disclose evidence materially favorable to the accused.' " Hurst v. State , 18 So.3d 975, 988 (Fla. 2009) (quoting Youngblood v. West Virginia , 547 U.S. 867, 869, 126 S.Ct. 2188, 165 L.Ed.2d 269 (2006) ). "The government's obligation to disclose materially favorable evidence extends to both exculpatory and impeachment evidence, and to evidence that is known only to police investigators and not to the prosecutor." Id. (internal quotation marks and citations omitted). "In order to demonstrate a Brady violation, the defendant has the burden to show (1) that favorable evidence, either exculpatory or impeaching, (2) was willfully or inadvertently suppressed by the State, and (3) because *198 the evidence was material, the defendant was prejudiced." Id. (citing Strickler v. Greene , 527 U.S. 263, 281-82, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999) ). It can certainly be argued that the payment of three hundred dollars to Hamilton constituted evidence favorable to Butler's defense, and there is no doubt that it was not provided to the defense in a timely fashion, prior to trial. Thus, the only issues we need to focus on is whether the evidence was material and whether Butler was prejudiced by not receiving that information prior to trial.
"To meet the materiality prong of Brady , the defendant must demonstrate 'a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.' " Franqui v. State , 59 So.3d 82, 101 (Fla. 2011) (quoting Strickler , 527 U.S. at 280, 119 S.Ct. 1936 ). "The materiality inquiry is not satisfied by simply discounting the inculpatory evidence in light of the undisclosed evidence and determining if the remaining evidence is sufficient." Id. at 102. "Rather, the question is whether 'the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.' " Id. (quoting Strickler , 527 U.S. at 290, 119 S.Ct. 1936 ). Butler cannot identify how the previously undisclosed information would have been used to further undermine Hamilton's credibility. Nor can we conclude that there is reason to believe that Hamilton's credibility before the jury would have been diminished further by information that Hamilton had received three hundred dollars essentially for getting Butler's confession on tape. That previously undisclosed evidence was only cumulative impeachment evidence which was unlikely to change the jury's view of Hamilton's credibility. See Rivera v. State , 187 So.3d 822, 839 (Fla. 2015) (holding that where a witness's motivation for testifying-seeking reduced jail time-was thoroughly explored and his credibility was impeached by evidence of multiple felony convictions, no new trial was warranted because the undisclosed information was largely cumulative of the disclosed and utilized impeachment evidence).
Hamilton's contribution to the case was not his testimony or credibility; rather, it was obtaining Butler's confession in a recording that was played for the jury. Even if Hamilton's credibility was somehow further diminished by his receipt of three hundred dollars, Butler has not shown how that would impact the jury's consideration of Butler's recorded confessions to Hamilton and to his girlfriend. The trial court's conclusion that this information "might have affected the defense's strategy" is insufficient. "The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense." Nixon v. State , 932 So.2d 1009, 1019 (Fla. 2006) (quoting United States v. Agurs , 427 U.S. 97, 109-10, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976) ). There is nothing in the record to suggest or support a conclusion that the verdict in Butler's case would have been different had he known earlier of the three-hundred-dollar payment made to Hamilton.
Accordingly, we find that the trial court erred in granting Butler a new trial based on an alleged Brady violation. We reverse and remand for entry of judgment consistent with the jury's verdict and this opinion.
REVERSED AND REMANDED.
WALLIS and HARRIS, JJ., concur.

Brady v. Maryland , 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).