Filed 2/16/16  P. v. Domingo CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>PAUL LEONARD DOMINGO,<br><br>Defendant and Appellant. | F069769<br><br>(Super. Ct. No. 12CM0408)<br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Kings County.  Robert S. Burns, Judge.

Lynette Gladd Moore, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Michael P. Farrell, Assistant Attorney General, Daniel B. Bernstein and Craig S. Meyers, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

# INTRODUCTION

A jury convicted defendant Paul Leonard Domingo of first degree robbery (Pen. Code, § 211, count 1),[1] burglary of an inhabited dwelling (§ 459, count 2), and being a felon in possession of a firearm (§ 12021, subd. (a)(1), count 3). The jury also found true enhancement allegations defendant used a firearm in the commission of counts 1 and 2 (§ 12022.5, subds. (a), (d)). In addition, defendant admitted he served two prior prison terms (§ 667.5, subd. (b)) and suffered a prior strike conviction (§§ 1170.12, subds. (a)-(d)), 667, subds. (b)-(i)).

Defendant moved for a new trial on multiple grounds, including the prosecutor's failure to disclose a computer-aided dispatch (CAD) report in violation of *Brady v. Maryland* (1963) 373 U.S. 83 (*Brady*) and numerous instances of alleged ineffective assistance of counsel. In the CAD report, a witness described the suspect as an Asian male with a fake gun. The trial court denied defendant's motion, but dismissed count 3 in addition to the firearm enhancements, finding the witness's account of the suspect having a fake gun was exculpatory *Brady* material. The trial court found no *Brady* violation in relation to the witness's description of the suspect as an Asian male, explaining it was duplicative of other evidence admitted at trial. Based on these rulings, the court also found no merit to the ineffective assistance of counsel claims.

The court also denied a motion by defendant to strike a prior conviction pursuant to *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 (*Romero*). Defendant was sentenced to a term of 10 years in prison.

On appeal, defendant contends: (1) the court prejudicially erred in denying his motion for a new trial because the prosecution's suppression of a CAD report, wherein a witness described the suspect as an Asian male, was a *Brady* violation; (2) defense counsel rendered ineffective assistance of counsel; and, (3) the trial court abused its

---

[1]All statutory references are to the Penal Code unless otherwise indicated.

2.

discretion in denying defendant's *Romero* motion. We disagree with his claims and affirm the judgment.

## FACTS AND PROCEDURAL HISTORY

On February 10, 2012, at approximately 6:00 p.m., Sandra Pacheco went to a convenience store in Hanford to cash her income tax refund check. Pacheco received a ride from her friend, Angelica Aguila. Pacheco's infant daughter and Aguila's nine-year-old son Marcus were also with them.

As Aguila was waiting in the car for Pacheco, she called an acquaintance, defendant, and asked him to come over later. Aguila and defendant met when they lived in the same apartment complex, where their sons played basketball together. Pacheco placed the refund, approximately $5,300 in cash, in her purse and Pacheco, Aguila, Marcus, and Pacheco's daughter went to Aguila's apartment.

At approximately 7:30 p.m. that evening, Pacheco was in Aguila's bedroom, talking on the phone to her boyfriend, when she took the money out of her purse to count it. Marcus was on the couch watching television and Aguila was in the bathroom. Pacheco heard Aguila tell someone to "come in," and observed a Black man in a black hooded sweatshirt come into the apartment. The man took out a gun and yelled "'[g]et on the ground.'" Aguila grabbed her son and temporarily blacked out.

Pacheco struggled with the man over the money. After he wrested it away from her, he turned to run outside. Pacheco grabbed the man by his sweater, but let go, fearful she might be shot. The man got into the driver's seat of a blue four-door vehicle and drove away.

Detective Cory Mathews of the Hanford Police Department interviewed Pacheco, Aguila, and Marcus separately about the incident. Aguila informed Mathews she had contacted defendant, whom she referred to as "S.P.," or "Shawn Paul," and told him to come over to her apartment. She told Mathews defendant entered her apartment waving a gun around and told everyone to "[g]et on the ground." Aguila described defendant as

3.

a Black male with slightly Asian-looking eyes.  She told Mathews defendant drove a blue Dodge Neon.

Aguila told Mathews she was fearful of defendant, and stated defendant threatened he would kill her if she contacted law enforcement.  When Mathews contacted her during the course of his investigation, she advised him she had moved to San Diego 10 days after the robbery because she was fearful of defendant.

Marcus described the perpetrator as a Black male with short hair, wearing a black hooded sweatshirt.  He told Mathews the perpetrator was a man he had met previously and whom his mother referred to as S.P.

The day after the robbery, defendant was detained by police.  During police questioning, he admitted his nickname is S.P.  He initially denied knowing Aguila, but later confirmed he was acquainted with her.

Defendant claimed that on the day of the robbery, he had traveled by bus to Lemoore, where he remained until returning home at 9:00 p.m.  He told Mathews he was with his girlfriend at the time the robbery occurred.

Defendant denied receiving a phone call from Aguila the day of the robbery, but when confronted with the fact his cell phone records would show his calls received, he admitted Aguila had called him.  When Mathews advised defendant records from his phone's global positioning system would also show his location on the date of the robbery, he told Mathews he had driven past Aguila's home.  He subsequently claimed someone else he was with entered Aguila's apartment to collect something they were owed.

Defendant stated he drove the other man to Aguila's apartment, but he waited in his car while the other man took the money.  Finally, he admitted he had, in fact, gotten out of his car and knocked on Aguila's front door.  Although he maintained another

4.

individual entered the home and took Pacheco's money, at one point during questioning he remarked, "'Now they're hysterical and mad because of the money that I took.'"[2]

At trial, Pacheco testified she was unsure whether the gun was a real gun or a BB gun. She stated the perpetrator acted alone. Although she positively identified defendant in a police photo lineup after the robbery, her identification wavered at trial, and she was unable to identify defendant in court.

Aguila testified the robber was a Black male with dark skin and eyes that appeared to look Asian.[3] She identified defendant as the perpetrator in a police photo lineup, but could not identify the suspect in court. She told Mathews she previously misidentified defendant as the perpetrator because she was afraid of Black people. She did, however, identify defendant in court as the man she knew as S.P.

Marcus testified the robber was a man dressed in all black with a fake gun. Shortly after the robbery, Marcus told Mathews that S.P., whom he had played basketball with, was the robber. He maintained he did not see a second man during the incident. At trial, Marcus denied defendant was the same person he knew as S.P., and he could not identify defendant as the perpetrator.

**MOTION FOR A NEW TRIAL**

On September 23, 2013, privately retained defense counsel filed a motion for a new trial on multiple grounds, including ineffective assistance of counsel because counsel failed to obtain the CAD report, he did not interview a potential witness for the defense in addition to a witness for the prosecution, he did not request appointment of a defense expert witness, he failed to communicate with defendant and to discuss his defense, and he failed to properly cross-examine the prosecution's witnesses. The motion was also

---

[2]At trial, defense counsel argued defendant actually stated, "Now they're hysterical and mad because of the money that *got* took." The audio recording of defendant's interrogation was not part of the record on appeal. Thus, we cannot determine whether there is a conflict between the recording and the record.

[3]Aguila used a racial epithet to describe the suspect's eyes.

based upon the prosecutor's failure to disclose a CAD report associated with the robbery. In the report, Aguila described the suspect as an Asian male with a fake gun, which had an orange tip. She also stated the suspect, a dark-skinned male, was wearing dark clothing and fled by himself in a blue four-door Neon. Defense counsel alleged the prosecutor's suppression of the CAD report was a *Brady* error, and defendant's court-appointed counsel rendered ineffective assistance of counsel in failing to request the report.

The trial judge held the CAD report in relation to the description of the suspect using a fake gun was suppressed in violation of *Brady*. The evidence was material and exculpatory because Aguila's statement about the gun being fake was relevant to defendant's conviction for the unlawful possession of a firearm (§ 12021, subd. (a)), in addition to the jury's finding defendant personally used a firearm in the commission of counts 1 and 2 (§ 12022.5, subd. (a)). Further, the prosecution's failure to disclose the CAD report was prejudicial because defendant's section 1118.1 motion to dismiss would have been granted with respect to the firearm charge and enhancement had the CAD report been disclosed.

The trial court held defendant's claims in relation to Aguila's identification of the perpetrator as an Asian male did not constitute a *Brady* error or ineffective assistance of counsel. The jury heard other evidence consistent with Aguila's description of the perpetrator as an Asian male and, as a result, defendant could not show prejudice from the suppression of the CAD report.

Defendant's motion for a new trial was denied, but the court dismissed defendant's firearm conviction and enhancements on its own motion. Defendant's robbery and burglary convictions remained.

## *ROMERO* MOTION

On July 11, 2014, defense counsel filed a *Romero* motion to strike defendant's prior strike conviction for making criminal threats (§ 422).

6.

Although few details were provided regarding defendant's prior conviction, the trial judge found defendant's extensive criminal record, his repeated probation and parole violations, and the fact his crimes were increasingly more serious in nature, were significant aggravating factors. The trial judge also noted defendant's current conviction and his prior strike conviction were violent offenses, they were committed close in time in relation to one another, and they reflected a tendency toward recidivism. Lastly, the court explained defendant's substance abuse problem was a mitigating factor. However, because defendant had done nothing, until recently, to address his problem, it was given little weight. As a result of the court's findings, defendant's motion was denied.

## DISCUSSION

**1.    Defendant's Motion for a New Trial**

Defendant does not argue the trial court's dismissal of the gun charge and enhancements was improper. He contends the trial court erred in failing to hold suppression of the CAD report in relation to Aguila's description of the perpetrator as an Asian male was a *Brady* violation. We find no error.

The prosecution has a duty to disclose evidence that is both favorable and "material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution" (*Brady*, *supra*, 373 U.S. at p. 87), and regardless of whether suppression of such material was intentional, negligent, or inadvertent (*In re Sodersten* (2007) 146 Cal.App.4th 1163, 1225). The duty exists even where there has been no request by the defendant (*United States v. Agurs* (1976) 427 U.S. 97, 107), encompasses both impeachment and exculpatory evidence (*United States v. Bagley* (1985) 473 U.S. 667, 676), and extends to evidence that may be known only to law enforcement investigators and not to the prosecutor (*Youngblood v. West Virginia* (2006) 547 U.S. 867, 869–870; *Kyles v. Whitley* (1995) 514 U.S. 419, 438).

Evidence, for the purpose of disclosure, is material "only if there is a reasonable probability that, had [it] been disclosed to the defense, the result of the proceeding would

7.

have been different." (*United States v. Bagley*, *supra,* 473 U.S. at p. 682; see also *In re Sassounian* (1995) 9 Cal.4th 535, 544.) "A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." (*United States v. Bagley*, *supra*, at p. 682.) In other words, "there is never a real '*Brady* violation' unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict." (*Strickler v. Greene* (1999) 527 U.S. 263, 281.)

The parties do not dispute the CAD report was within the prosecutor's possession and it was suppressed. The only issue is whether the prosecutor's failure to disclose the CAD report prejudiced defendant with respect to Aguila's description of the suspect. We conclude defendant has failed to show the requisite prejudice.

In the CAD report, Aguila had described the suspect as an Asian male with a fake gun. She had also stated he was dark skinned, wore dark clothing, was by himself, and he fled in a blue four-door Neon. However, the jury heard testimony from Aguila and Mathews consistent with Aguila's description of the suspect in the CAD report.

On direct examination, Aguila testified the suspect was dark skinned and had distinctive eyes. Further, during the direct examination of Mathews, he related Aguila described the suspect as having slightly Asian-looking eyes. On cross-examination, defense counsel asked Mathews whether Aguila described the suspect as Black. He confirmed she had. Defense counsel then asked whether Aguila told him the suspect "has Chinese eyes, like he's Asian, like maybe his daddy is Asian?" Mathews confirmed Aguila had stated the suspect could be half Asian and half Black.

Aguila described the suspect as Asian in one portion of the CAD report and as a dark-skinned male in another portion of the report. Aguila's and Matthew's testimony is not only consistent with Aguila's description of the suspect in the CAD report, it discredits defendant's contention disclosure of the CAD report would have undermined confidence in the verdict.

8.

We conclude the CAD report does not contain impeachment evidence or exculpatory material in relation to Aguila's description of the suspect. Thus, defendant has failed to make a threshold showing of prejudice pursuant to an alleged *Brady* violation.

## 2. Ineffective Assistance of Counsel

Defendant contends defense counsel rendered ineffective assistance based on multiple grounds, alleging defense counsel failed to obtain the CAD report, he did not interview a potential witness for the defense in addition to a witness for the prosecution, he did not request appointment of a defense expert witness, he failed to communicate with defendant and to discuss his defense, and he failed to properly cross-examine the prosecution's witnesses. Because defendant has failed to show prejudice, we reject his claim of ineffective assistance of counsel.

A defendant claiming ineffective assistance of counsel in violation of the Sixth Amendment right to counsel must show (1) defense counsel's performance fell below an objective standard of reasonableness under prevailing professional norms; and, (2) the deficient performance resulted in prejudice by depriving the defendant of a fair trial. (*Strickland v. Washington* (1984) 466 U.S. 668, 687; *In re Jones* (1996) 13 Cal.4th 552, 561.) It is the defendant's burden to establish, based on the record and on the basis of facts, defense counsel was ineffective. (*People v. Mattson* (1990) 50 Cal.3d 826, 876–877.)

As previously set forth, we find no prejudice as a result of defense counsel's failure to obtain the CAD report. Many of defendant's remaining allegations underlying his ineffective assistance of counsel claim were determined to be without merit by the trial court in a hearing held pursuant to *People v. Marsden* (1970) 2 Cal.3d 118 on August 22, 2012, and in denial of his motion for new trial.

Defendant does not challenge the trial court's ruling on his *Marsden* motions. He does claim the court erred by denying his new trial motion on his claim of ineffective

9.

assistance of counsel. We need not examine the trial court's findings because even assuming defense counsel erred as asserted by defendant, the evidence against defendant was strong and we find no prejudice as a result. The three witnesses to the incident identified defendant as the perpetrator of the robbery in a police photo lineup. While defendant asserted a second man committed the robbery while he waited outside, none of the witnesses observed a second individual.

Shortly after the robbery, all three witnesses were interviewed by Mathews. Aguila and Marcus identified the perpetrator as a man they referred to as S.P., and Aguila identified defendant as S.P. in court. Although the witnesses' identification of defendant as the perpetrator wavered at trial, it can be reasonably inferred they were intimidated by him and did not want to implicate him in the crime. Aguila told Mathews defendant threatened to kill her if she contacted law enforcement. She also advised Mathews she had moved just 10 days after the robbery because she was fearful of defendant.

The strongest evidence of defendant's guilt came from defendant himself. During police questioning, defendant's rendition of events changed frequently in an apparent attempt to exculpate himself. He initially denied receiving a phone call from Aguila or visiting her home on the night of the robbery. However, he eventually placed himself at the scene of the crime, stating he drove someone else to Aguila's apartment but claiming that person took Pacheco's money. Indeed, by his own admission, defendant was at least an accomplice to the crime. In light of this evidence, any possible alibi testimony by defendant's girlfriend, Magen Schexnayder, would have been rejected.

Accordingly, defendant has failed to demonstrate a reasonable probability the result of the proceeding would have been different had the CAD report been disclosed. (*Strickland v. Washington*, *supra*, 466 U.S. at p. 694.) Thus, we reject his ineffective assistance of counsel claim.

### 3. Defendant's *Romero* Motion

Defendant also contends the trial court abused its discretion in denying his motion to strike a prior strike conviction. We disagree.

Section 1385, subdivision (a) gives the trial court the discretion to strike an allegation that a defendant has previously been convicted of a felony if the dismissal is in furtherance of justice. (*Romero*, *supra*, 13 Cal.4th at p. 508.) "[T]he order striking such allegations … embodies the court's determination that, '"in the interest of justice" [the] defendant should not be required to undergo a statutorily increased penalty which would follow from judicial determination of [the alleged] fact.'" (*Ibid*.)

In deciding whether to strike a prior conviction, "the court in question must consider whether, in light of the nature and circumstances of [the defendant's] present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*People v. Williams* (1998) 17 Cal.4th 148, 161.)

We review a trial court's decision not to dismiss a prior strike conviction under the deferential standard of abuse of discretion. (*People v. Carmony* (2004) 33 Cal.4th 367, 374.) We will not find abuse unless the trial court's decision was "so irrational or arbitrary that no reasonable person could agree with it." (*Id*. at p. 377.) When the record shows the trial court considered relevant factors and acted to achieve legitimate sentencing objectives, the court's decision will not be disturbed on appeal. (*People v. Myers* (1999) 69 Cal.App.4th 305, 310.)

Defendant, who was 28 at the time he committed the instant offense, has an extensive criminal history, which spans 13 years and includes five prior felony convictions and eight prior misdemeanor convictions. He committed the prior strike offense, making criminal threats (§ 422), in April 2010. Five months after being released from prison, while on parole, he committed petty theft (§ 484, subd. (a)) and was placed

11.

on probation. Defendant was on probation when he committed the instant offense. Thus, defendant's criminal history demonstrates poor performance while on parole or probation.

Defendant has also served two prior prison terms. Less than one year after he was paroled for making felony criminal threats, for which he served his most recent prior prison term, he committed the instant offense. Prior to the instant offense, defendant's criminal record consists of convictions for comparatively less serious crimes, including multiple convictions for misdemeanor possession of a controlled substance (Health & Saf. Code, § 11357, subd. (b)); however, his criminal career culminates in a felony conviction for robbery (§ 211) and burglary (§ 459). Defendant's crimes not only reflect a pattern of recidivism, they are increasingly more serious in nature.

Although defendant's prior strike offense and the instant offense did not result in any physical harm, his crimes involved threats of great bodily harm, causing the victims to fear for their personal safety or the safety of immediate family members. A conviction for making criminal threats pursuant to section 422 requires the threat to cause the victim to reasonably fear for his or her own safety, or for the safety of an immediate family member. (CALJIC No. 9.94.) In addition, it can be reasonably inferred defendant's use of a gun in the robbery, real or not, was intended to cause the victims fear so they would relinquish a large sum of money. (Cal. Rules of Court, rule 4.421(a)(1), (9).) Moreover, defendant's use of a gun and dark clothing also indicate the crime was executed with a degree of planning. (Cal. Rules of Court, rule 4.421(a)(8).)

Although we observe defendant does appear to have a substance abuse problem based on his criminal history, this mitigating factor does not outweigh the myriad of aggravating factors present. As previously set forth, by employing a gun, defendant threatened the victims with great bodily harm in the commission of the instant offense (Cal. Rules of Court, rule 4.421(a)(1)), the circumstances of the crime indicate it was a planned offense (rule 4.421(a)(8)), defendant took a significant sum of money from

12.

Pacheco (rule 4.421(a)(9)), his prior convictions demonstrate a pattern of increasingly serious criminal behavior (rule 4.421(b)(2)), he has served two prior prison terms (rule 4.421(b)(3)), he was on probation when he committed the instant offense (rule 4.421(b)(4)), and he has a demonstrated history of unsatisfactory performance while on parole or probation (rule 4.421(b)(5)).

Defendant has failed to establish the trial court's denial of his *Romero* motion was outside the bounds of reason under the facts and the law and, as a result, we find no abuse of discretion.

## DISPOSITION

The judgment is affirmed.

_____

PEÑA, J.

WE CONCUR:


_____

HILL, P.J.


_____

GOMES, J.